(CHANCERY.)

## Morgan's heirs v. Morgan *et. al.*

The jurisdiction of the circuit court, having once vested between citizens of different states, cannot be devested by a change of domicil of one of the parties, and his removal into the same state with the adverse party, *pendente lite.*

In a suit demanding the specific performance of a contract, by conveying lands in the state of Ohio, stipulated to be conveyed as the consideration for other lands sold in the state of Kentucky, or, in lieu thereof, requiring indemnification by the payment of money; it was held that all the co-heirs of the vendor, deceased, ought to be made parties to the bill, and that the death of one of the heirs ought to be proved, in order to excuse his omission as a party to the bill.

It is a universal rule of equity, that he who asks for a specific performance must be in a condition to perform himself.

Therefore, the vendor, being unable to make a title free from incumbrances, to the lands sold in Kentucky, was held not to be entitled to a decree for a specific performance.

APPEAL from the circuit court of Kentucky.

This was a bill in equity, filed by the complainants in the court below, (who are the defendants here,) founded on a bond, conditioned for the conveyance of 5,000 acres of land, to be situated within certain bounds of the state of Ohio; for which land a conveyance was prayed, if the defendant was possessed of, or had the means of acquiring, the title thereto, and, in the event of such inability on the part of the defendant to comply specifically with his stipulation, a compensation in damages in lieu there-

of; and, in this latter case, that a tract of 1,000 acres of land, situate in the county of Bourbon, in the state of Kentucky, which formed the consideration on the part of the complainants, for the 5,000 acres of Ohio land, and for the conveyance of which the ancestor of the complainants had, contemporaneously with the first bond, executed his own obligation to the defendant, should be sold for the purpose of completing such indemnity, upon the suggestion of the insolvency of the defendant; on the ground of the equitable lien existing on the part of the complainants in that land, for the purpose of such indemnity. The bill further alleged, that the ancestor of the complainants, discovering the inability or unwillingness of the defendant to fulfil the stipulations of his said bond, for the purpose of his ultimate indemnity against the consequences of such failure, had instituted an ejectment in the Fayette circuit court, against James Patton, to whom the defendant had many years before sold, and invested with the possession of the said 1,000 acre tract, against whom judgment had been rendered in his favour. That subsequent to such judgment, an adjustment of the accounts of improvements, rents, and profits, had been effected between them, which was shown by an agreement in writing, in which it was stipulated that the said Patton should pay to the ancestor of the complainants the sum of 30 dollars, in full for rents, and should yield up the possession of the premises on a day therein named. But that in violation of the spirit and true intention of this agreement of compromise, he, the said Pat-

ton, had fraudulently prosecuted a writ of error to the said judgment in ejectment; and having procured, in the appellate court, a reversal of the said judgment, had secretly, illegally, and by combination with Chilton Allen, and others, procured a sale, under colour of an execution for the costs, on the reversal aforesaid, for the sum of 13 dollars 72½ cents, and sacrificed 666⅓ acres of the said tract, worth many thousand dollars, for that trivial sum; the said Allen having become the purchaser, and subsequently conveyed 500 acres thereof to Patton, and the residue to James Scoby, all of whom are made parties to the bill. The complainants, for the purpose of giving legal effect to the lien given them by equity, on this tract of 1,000 acres of land for the satisfaction of their demand, pray that the sale, and all other proceedings on the execution for costs, be vacated on account of the fraud and illegality by which the same was effected.

Morgan, the defendant, in his answer, admits, that he was unable to comply with the contract to convey the lands N. W. of the Ohio; alleges fraud in the original contract, &c.

Allen, Patton, and Scoby, deny fraud, &c., and allege a good title under the sheriff's deed.

On the hearing, the court, at their November term, in 1814, dismissed the bill as to Allen, Patton, and Scoby; but decided that the defendant, Morgan, was responsible for the value of the lands in Ohio, and directed a jury to ascertain its value. At the May term, 1815, a jury estimated the Ohio land to be worth, on the 11th day of December, 1795,

5,000 dollars; on the 11th of December, 1796, 6,250 dollars; and at that date, 20,000 dollars. At the November term, 1815, a motion for a re-hearing having been overruled, a decree was rendered, on behalf of the complainants, for 6,250 dollars, with interest from the 11th December, 1796, and costs against the defendant, Morgan, and execution ordered against his estate. Commissioners were also appointed to sell the land, if the money could not be made by execution, and the commissioners directed to convey to the purchaser. The complainants were also directed to join in the conveyance, and to stipulate to pay, at the rate of 20 shillings per acre, for any of the land that might be lost by a superior title.

By a copy of the will of C. Morgan, of Pennsylvania, exhibited in the cause, it appeared that the testator had a son, William Morgan, who was one of his heirs, and who is no party in the cause. It also appeared that there are two other executors not named in the bill.

During the progress of the suit, Daniel Morgan, one of the complainants, removed to, and became a citizen of, Kentucky. This was shown to the court, and a motion made to dismiss the suit for the want of jurisdiction, and overruled.

Mr. *M. B. Hardin* and Mr. *Jones*, for the appellants. 1. The voluntary change of citizenship by one of the complainants, *pendente lite*, is a waiver of the privilege of maintaining a suit in the circuit court, which exists only between citizens of *different* states, and ceases by the parties becoming citizens of the

*1817.*

*Morgan's heirs v. Morgan.*

March 8th.

*same* state. The general rule is, that a court, once having jurisdiction of a cause, will keep it; but that relates to the subject matter of the suit: here it is a personal privilege, which the party waives by removing into the same state with his adversary; and in this case, into any other state; because all the parties on one side must be citizens of one state, and all the parties on the other, citizens of another state. 2. There is a defect of proper parties to the bill. 3. This is, substantially, a bill by a vendor to compel the vendee to complete the contract, and ought not to be sustained; because the contract was unequal, and the vendor had himself disaffirmed it. Where there is inequality in the contract, a court of equity will not decree a specific performance even in a case where damages might be recovered at law, but will remit the parties to their legal remedy. 4. In order to obtain a specific performance, the vendor must show that he has a good title to give; which is not the case here, the land being incumbered by the judicial sale, which gives at least a presumptive title against the vendor's claim. 5. The decree is inequitable in its details. If damages ought to have been decreed, the estimated value of the land stated in the written contract was the true measure of damages, and not the sum stated in the decree. The order for the sale of the land under incumbrances was improper; as some of the complainants were infants, some *femes coverts*, and one of the heirs not made a party to the suit; so that no legal title could be acquired by a purchaser, without time, trouble, and expense.

Mr. *Talbot*, contra. 1. The removal of one of the parties cannot oust the court of its jurisdiction. The citizens of different states have not an individual, peculiar, personal privilege; but it is a classification of persons, who, under the constitution, have a right to sue in the national courts. 2. As it regards the primary object of the suit, the title to the Ohio land, the bill is that of daily and familiar use; that with a double aspect, requiring of the chancellor a specific execution of the stipulation for conveyance, in pursuance of the defendant's bond, or in the event of inability, (in relation to which the complainant is ignorant,) upon the ascertainment of such entire inability, compensation equivalent to the value of the land in lieu thereof. The enforcement of the equitable lien, held by the complainants on the Bourbon land, the possession of which (but not the title) their ancestor had transferred to the defendant, Morgan, is the peculiar and exclusive province of the equitable tribunal; and especially in Kentucky, by the laws of which, the equitable claims to real estate are not made subject to execution. The equity of the lien on behalf of the complainants is irresistible, on the supposition of the inability of the defendant, Morgan, to convey the Ohio land; the Bourbon land constituting the entire consideration for the stipulation of the defendant for the conveyance of the other; and the ancestor of the complainants having taken no personal security, but retained the legal title as his only guarantee for the faithful execution of the stipulation on the part of the defendant, Morgan; and the embarrassments in which the title and possession

of the Bourbon land had become involved by the acts of the defendant, Morgan, and those claiming through and under him, in relation to the fraudulent and illegal sale of that land, under colour of the execution, forms another distinct and unquestionable ground for the interposition of equity jurisdiction; the tribunal of the chancellor alone possessing competent powers by a single suit (avoiding multiplicity of harrassing litigation) to embrace all these various subjects of controversy, and by its decree, co-extensive with the matters in contest, to do final and complete justice to all the parties. 3. The subsequent, fraudulent, or illegal sale and purchase of the Bourbon land, effected through the agency of Patton claiming and holding possession of the same, under the defendant; a sale effected not only in violation of the solemn stipulations between said Patton and the ancestor of the complainants, by the terms of which the proceedings under the ejectment and all matters in relation thereto, were finally compromised between them; but, also, in defiance of the various provisions of the acts of the Kentucky legislature, authorizing the sales of real estate under execution, ought not to affect or prejudice the right of the complainants to recover of the defendant, Morgan, an indemnity for his failure to convey the Bourbon land. 4. The sale of the Bourbon land under colour of the execution or costs was irregular and illegal in the following particulars: 1st. That the act of the Kentucky legislature, under which this sale is attempted to be justified, only authorizes the sale of real estate on execution for _debt_ or _damages_, and

not executions for *costs* alone, as was that from the court
of appeals, in the present case.    2d. The act requires
that the sale to be effected under such executions
shall be advertised on the door of the court-house, on
a court day; thereby clearly intending that such ad-
vertisement should be placed in that situation, in
time to afford the requisite information to all persons
attending court, for the entire day; which was not
done on this occasion, the advertisement not having
been put up until the latter part, or afternoon of the
day.    3d. The said sale was not advertised at the
court-house, and some meeting-house door, and at the
other most public places, within the county, as required
by the said act; in consequence of which omissions to
comply with those important requisitions of the law,
the land of the complainants, worth several thousand
dollars, was sacrificed for a paltry and insignificant
sum.

Mr Chief Justice MARSHALL delivered the opinion
of the court.

In this case two questions respecting the formal
proceedings of the circuit court have been made by
the counsel for the appellant.

The first is, that one of the complainants in the
original suit having settled in the state of Kentucky
after this bill was filed, that court could no longer
entertain jurisdiction of the cause, and ought to have
dismissed the bill.

We are all of opinion that the jurisdiction having
once vested, was not devested by the change of resi-
dence of either of the parties.

2d. It appearing from the will that at its date the testator had a child who is not a party in this suit, the bill ought to be dismissed, or the decree opened and the cause sent back to make proper parties.

It is unquestionable that all the coheirs of the deceased ought to be parties to this suit, either plaintiff or defendant; and a specific performance ought not to be decreed until they shall be all before the court. It would, perhaps, be not enough to say that the child named in the will, and not made a party, is most probably dead. In such a case as this, the fact of his death ought to be proved, not presumed. But as the opinion of the court on the merits of the cause will render it unnecessary to decide this question, it is thought best for the interest of all parties to proceed to the consideration of another point which will finally terminate the con-

---

*b* The general rule, requiring all persons interested to be made parties to the suit, is confined to parties to the interest involved in the issue, and who must, necessarily, be affected by the decree. It is a rule of convenience merely, and may be dispensed with when it becomes extremely difficult or inconvenient. Wendell v. Van Rensselaer, 1 *Johns. Ch. Rep.* 349. And the want of proper parties is not a good plea, if the bill suggests that such parties are out of the jurisdiction of the court. Milligan v. Milledge *et ux.* 3 *Cranch,* 220. Travers v. Buck-ley, 1 *Ves.* 385. Cowslad v. Coley, 1 *Vern.* 140. In such a case, if the property in litigation be within the control of the party who is brought before the court, it may be acted upon by the court. Smith v. Hibernia Company, 1 *Schoales & Lefroy,* 240. Williams v. Whinyates, 2 *Brown's Ch. Cas.* 399. No person need be made a party, against whom if brought to a hearing, the plaintiff cannot have a decree; as a residuary legatee, and a bankrupt in a suit brought against the assignees. De Golls v. Ward, in note 1 to 3 *Pere Will.* 311.

test, so far as it is to be determined in a court of equity.

This is a suit for the specific performance of a contract, either by conveying lands in the state of Ohio, stipulated to be conveyed as the consideration for land sold in the state of Kentucky; or, if that be out of the power of the obligor, by paying money in lieu thereof. Although the contract is not contained in one instrument, but consists of two bonds, the one given by Charles Morgan of Pennsylvania, binding himself to convey the land in Kentucky, and the other by Charles Morgan of Kentucky, binding himself to convey the land in Ohio; yet, it is essentially one contract; and it sufficiently appears that the land in Ohio forms the consideration for the lands in Kentucky. It is then a case standing on those general principles which govern all applications to a court of equity, to decree the specific performance of a contract.

In cases of this character, no rule is more universal than that he who asks for a specific performance must be in a condition to perform himself. This point was fully considered in the cases decided in this court between Hepburn and Dundas, and Colin Auld as the agent of Dunlop & Co., and the principles laid down in those cases are believed to be entirely correct.[a]

Let us inquire, then, whether the plaintiffs in the court below have brought themselves within this rule.

It is incumbent on them to show an ability to convey to the defendant in that court a clear estate in

1817.

Morgan's
heirs
v.
Morgan.

a Vide ante, Vol. I. p. 179.

fee simple in the tract of one thousand acres lying in Kentucky, which was sold to him by their ances-. tors.   Have they done so?

The co-heirs are, some of them, *femes covert*, and some of them infants..  The decree against the defendant for the value of the Ohio land is not dependent on their making him a conveyance of the land in Kentucky, but is absolute.   He is to pay the consideration money, and then obtain a title if he can. It is true that in the event of selling the Kentucky land, which is to take place after exhausting the personal estate of Charles Morgan of Kentucky, the complainants are directed to join in the conveyance; but this contingency may not happen; and if it should, a decree that *femes covert* and infants who are plaintiffs, and against whom no cross bill has been filed, should convey, might not secure a conveyance.

This might be corrected by sending the case back with instructions to new model the decree so as to adapt it to the situation of the parties, did it appear to the court that the appellees are able to make such a title as the appellant ought to receive.

But the appellees appear to the court to be incapable of making an unincumbered title to the land sold by their ancestor.   Six hundred and sixty-six acres have been sold under an execution, and conveyed by the officer making the sale.   The terretenants have been brought before the court.   The bill, as to them, has been dismissed; and from the decree of dismission there has been no appeal.   Can this

court close its eyes on their title, or declare it invalid?

It has been said that the sale is fraudulent, irregular, and illegal. But the court empowered to examine these allegations has decided against them, and from its decree no appeal has been taken. The incumbrance is an incumbrance in fact, and its legality can be inquired into by this court only in a suit to which the persons claiming the title are parties.

It might be urged, that as the appellant sold to Patton, and Patton holds also under the sheriff's sale, he is not now at liberty to consider Patton's title as an incumbrance on the land.

This argument would be entitled to great consideration was it applicable to the whole land sold by the sheriff. But it is inapplicable to one hundred and sixty-six acres, part of the tract which has never been sold by the appellant.

If the titles acquired under the sheriff's sale be such as would be annulled in a court of law or equity, (concerning which this court gives no opinion,) it was incumbent on the plaintiffs to annul them before they obtained a decree for a specific performance.

Other objections have been made to the decree of the circuit court. It has been said that the contract was in its origin unequal, and that the ancestor of the appellees had in his life time, by his conduct, disaffirmed the contract. It is deemed unnecessary to examine these objections, because the court is of opinion that the inability of the appellees to make

such a title to the land at this time as the appellant ought to accept, deprives them of the right to demand a specific performance. Neither party can at present claim the aid of this court, but ought to be left to pursue their legal remedies.

### Decree reversed, and bill dismissed.[*]

*d* There can be no doubt that the origin of the doctrine of the English court of chancery, as to the specific performance of agreements, is to be traced to the Roman law ; although the commentators on that law are divided in opinion as to whether it would compel the actual delivery of the thing sold, or whether, in case of refusal, on the part of the vendor, his obligation resolves itself into the payment of pecuniary damages. Those civilians who are of the latter opinion, ground themselves, 1st. On the *Code de act. vend. et empt. L.* 4. *tit.* 49., § 4. which subjects the vendor to damages for refusing to deliver possession of the thing sold. 2d. On the maxim of law that *nemo potest cogi præcisè ad factum ;* from whence they conclude that *nemo potest cogi ad traditionem.* The contrary opinion is supported, among others, by Pothier, who states it to be conformable to the practice on the European continent to enforce a specific performance of the contract of sale. He answers the above objections

drawn from the 4th law of the *Code, de act. vend. et empt.*, by stating that this law does indeed give to the vendee the action *in id quod interest*, against the vendor who refuses to deliver possession of the thing sold ; but that it does not confine his remedy to this action alone. He cites *Paulus, Sent.* 1. 13. 4. as a precise authority that the vendor may be compelled to deliver the thing specifically, *potest cogi ut tradat ;* but as it may not always be convenient or practicable for the vendee to cause himself to be put in possession *manu militari,* he is, by this law, permitted to resort to his action *in id quod interest.* He has the choice of the two remedies. As to the argument drawn from the maxim, that *nemo potest cogi ad factum,* and that those contracts which consist in the obligation to do a certain thing, resolve themselves *in id quod interest actoris,* Pothier answers, that this maxim is inapplicable, except where the act to be done is a mere personal act of the debtor, *merum factum ;* as where a person contracts to

1817.

Morgan's
heirs
v.
Morgan.

copy a manuscript, or to excavate a ditch, in which case, if the agreement be not performed, the obligation necessarily resolves itself into pecuniary damages. But that the act of delivering possession of the thing sold, is not *merum factum, sed magis ad dationem accedit:* and that the debtor may be compelled to perform it specifically. *De Vente,* No. 68. This principle he extends even to personal property; but in the practice of the English court of chancery agreements respecting chattels are not, in general, enforced, as has been before noticed. *Ante,* Vol. I. p. 154., note *(a.)* So, also, that court refused to decree a specific performance of a covenant to *make good a gravel pit.* Scholefield v. Whitehead, *2 Vern.* 127. And to refer a controversy to arbitration. Street v. Rigby, 6 *Ves.* 818. These last cases fall within the distinction stated by Pothier of a mere personal act, the obligation of which, in case of non-performance, resolves itself into pecuniary damages; to recover which the party must resort to his action at law. But Lord Hardwicke held, contrary to the principle of this distinction, in the case of the City of London v. Nash, 3 *Atk.* 512., that a covenant to *build* or *rebuild* might be specifically enforced, but not a covenant to *repair.* And the same case is mentioned as within the jurisdiction of the court of chancery

in the year book of 8 E. 4. 4. b., one of the earliest recognitions of the equitable powers of the court. But the modern authorities seem to lean against this doctrine. Lucas v. Commerford, 3 *Brown's Ch. Cas.* 167. S. C. 1 *Ves.* jun. 236. Mosely v. Virgin, 3 *Ves.* 184. Flint v. Brandon, 8 *Ves.* 164. Errington v. Aynesley, 2 *Brown's Ch. Cas.* 343.

Although the vendee is not obliged to take a defective title, yet, if there be a mistake or misrepresentation as to the quantity or quality of the property sold, or of the estate of the vendor therein, the vendee may, if he elects so to do, have the difference deducted from the purchase money, by way of *compensation,* and a specific performance as to the rest. There is a settled distinction, when a vendor comes into a court of equity to compel the vendee to a performance; and when a vendee seeks to compel a vendor to perform. In the first case, if the vendor is unable to make out a title as to part of the subject matter of the contract, which was the principal object of the purchaser, equity will not compel the vendee to perform the contract *pro tanto.* In the second case, the vendee may, if he chooses, take the part to which a title can be made. Waters v. Travis, 9 *Johns. Rep.* 465. Milligan v. Cooke, 16 *Ves.* 1. Halsey v. Grant, 13 *Ves.* 77. Mortlocke v. Buller, 10 *Ves.* 316.

1817.

Morgan's
heirs
v.
Morgan.

Paton v. Rogers, 1 *Ves. & Beat.* 353. But where the particular or memorandum described the estate as containing, by estimation, so many acres, " *be the same more or less*," the vendee was held not to be entitled to an abatement in the price for a deficiency in the quantity of acres sold. Winch v. Winchester, 1 *Ves. & Beat.* 375. The court of chancery, in decreeing a specific execution of agreements, governs itself by a moral certainty, for it is impossible in the nature of things there should be a mathematical certainty of a good title. Therefore, it was held in England that a reservation in the grant of an estate by the crown of royal mines within the premises was not such a blemish in the title as would excuse the vendee from taking it; because it seems the crown had no power to grant a license to any person to come upon a subject's estate and search for such mines; and even if it had the power, it was extremely improbable that it would ever be exercised. Lyddal v Weston, 2 *Atk.* 20. So, also, in this country, where A. contracted to convey to B., " by a good and valid conveyance in law," a farm, which was originally parcel of a large tract of ground granted by the proprietor of a manor to the ancestor of A., in fee, " yielding and paying to the grantor, his heirs and assigns, the yearly rent of ten shillings," the proportion of which quit rent, on

the farm, was 54 cents a year; the existence of the quit-rent being known to B. at the time of the contract, it was held that the existence of such an incumbrance, (if it were any,) was no objection to a decree for a specific performance of the contract. Ten Broek v. Livingston, 1 *Johns. Chan. R.* 357.

In general, the vendor may compel a specific performance, if he can make a good title at the time of the decree, although he had not a good title when the land ought to have been conveyed according to the terms of the contract. Langford v. Pitt, 2 *Pere. Will.* 630. Mortlocke v. Buller, 10 *Ves.* 315. Coffin v. Cooper, 14 *Ves.* 205. Hepburn v. Auld, 5 *Cranch*, 262. Hepburn *et. al.* v. Dunlop *et. al. Ante,* Vol. I. p. 179. Where, after bill, answer, and replication, no farther steps were taken in the cause for upwards of twenty years; this was held as not of itself a reason for refusing a specific performance, there being acquiescence on both sides. Cain v. Allen, 2 *Dow.* 289. And where an agreement for the sale of lands was suffered to remain unexecuted for fourteen years; the vendee having taken, and continued to hold, possession; the court, under the peculiar facts of the case, decreed a specific performance of the contract.— Waters v. Travis, 9 *Johns. R.* 466. But, as a general rule, the court will not suffer a party, at

1817.

Morgan's
heirs
v.
Morgan.

the distance of years, to come to the court and say that he is ready to make a good title, and demand a specific performance. Jenkins v. Hiles, 6 *Ves.* 646. Wynn v. Morgan, 7 *Ves.* 205. And the parties may make *time* of the essence of the agreement, so that if there be a default at the day, without any just excuse, and without any waiver afterwards, the court will not interfere to help the party in default. Benedict v Lynch, 1 *Johns. Chan. Rep.* 370.

The court of chancery will not, except under very particular circumstances, upon a bill for the specific performance of a contract, if the party be not entitled to a specific performance, direct an issue of *quantum damnificatus,* or a reference to the master to ascertain the damages. The plaintiff, if he chooses that remedy, must resort to law, it not being like the case of a defect of title as to part, or of quality, or quantity, where a specific performance may be decreed as to so much as the vendor is able to perform, and a *compensation* to the vendee for the residue. Todd v. Gee, 17 *Ves.* 273. But where the defendant has put it out of his power to perform the contract, the bill will be retained, and it will be referred to the master to assess the plaintiff's damages. Denton v. Stewart, 1 *Fonb.* 38, Note *y.,* and 165, Note *b.,* and 1 *Ves.* 349. 17 *Ves.* 276, Note *b.* Greenaway v. Adams, 12 *Ves.* 395. And where a specific performance was refused, because the contract was within the statute of frauds, yet the plaintiff having sustained an injury for which he was entitled to compensation, and for which he had no remedy, or at best a doubtful and inadequate remedy at law, the court retained the bill and awarded an issue of *quantum damnificatus* to assess the damages sustained by the plaintiff by the acts of the defendants. Phillips v. Thompson *et al.,* 1 *Johns. Chan. Rep.* 131.