MARY J. THOMPSON ET AL.

v.

CHARLES H. WEEKS.

*Injunctions—Right to Excavate Sand and Loam—Contracts—Construction—Remedy at Law—Equity Jurisdiction.*

Upon a bill asking that defendants be enjoined from interfering with certain excavations, it is *held:* That under the contract between the parties the plaintiff had no right to excavate at the controverted point without permission of defendants; that his remedy, if any, for the defendant's refusal to allow him to excavate at the desired point was at law, and that equity had no jurisdiction in the premises.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Will County; the Hon. DORANCE DIBELL, Judge, presiding.

This was a bill for an injunction filed in the Circuit Court by appellee against appellants seeking to restrain them from in any manner interfering or hindering the operations of appellee, or any of his employes, in excavating and removing sand and loam from the farm of the appellants in the town of New Lenox and from bringing suits against appellee or any of his employes, civil or criminal, on account of any supposed violation of the law in making such excavations. The writ was temporarily granted, but afterward, upon answer, and trial upon the evidence, the court made the injunction perpetual, giving by the decree the possession of the loam bank marked in the plat "C," in the oat field, to appellee.

The injunction was based upon a written agreement between the parties to the injunction suit and the alleged violation on the part of appellants of the said agreement. The contract between the parties by which appellee secured the right to remove loam and molding sand from appellant's farm is as follows:

"This agreement made October 6, 1889, witnesseth that Mary J. Thompson and J. M. Thompson, her husband. of the first part, hereby lease the exclusive privilege and right of using and removing for the purpose of trade loam and molding sand from their farm in New Lenox, Will county, Illinois, for a term of three years, from the first day of December, A. D. 1886, to Charles H. Weeks, upon the following conditions, to wit:

"First. That the excavations shall be confined as near as can be (for the convenience of said Weeks and for the well being of the farm and as may be agreed upon from time to time) to the immediate neighborhood of the farm crossing on the Michigan Central Railroad, where a switch is now being placed.

"Second. The surface soils shall be carefully spread over the new surface left after the removal of the sand and loam, and shall, at the expiration of this lease, or upon the sur-

render and cancellation of the same, leave the land in good shape with the banks leveled to a slope of 65 degrees.

" Third. That said Weeks shall pay said parties of the first part five cents per ton for all loam and molding sand removed from said farm, said payments to be made at the end of each and every month, taking railroad rates as a basis of settlement.

" Fourth. For the first year the said Weeks shall pay not less than one hundred dollars and for every year thereafter not less than one hundred and fifty dollars, although the sand and loam he may ship shall not amount to that sum.

" Fifth. That said party of the second part shall use for roadway in entering and leaving the premises above described a track on the south side of the Michigan Central Railroad, running parallel with the said track, and close to the railroad fence on the south side of the same.

" Sixth. The said party of the second part shall not obstruct or retard the passage of teams of the party of the first part from going or coming about farm work on the south side of the railroad.

" Seventh. That said party of the second part agrees to be responsible for all damage that may occur to property belonging to party of the first part, growing out of any neglect on his part to keep fences and gates properly secured, and should any such damages occur they shall be ascertained by appraisement, and paid by the said Weeks.

" Eighth. That said Weeks may at any time after one year, have the privilege of surrendering and canceling this lease or contract if he shall so desire, and should party of the second part so surrender this lease before the expiration of the three years he shall pay a land rent of six dollars per acre for land so used that can not be cultivated that season."

It appears that immediately after the execution of the agreement, the appellee commenced operations by excavating and shipping loam and sand from the farm in accordance with the agreement and continued operation until September 20, 1888, when he was prevented from further proceeding by appellants. At an expense of about $250 appellee put in a switch

at the crossing, and began excavating for loam and sand immediately outside of the railroad right of way, and just west of the gate at the crossing.  After having removed the deposits from about two acres, he applied to appellants for permission to open up another pit lying a little to the south of the one first worked.  At first appellants objected to this, but finally granted a limited amount of loam and sand to be taken out there.  According to a map in evidence, the first place where work was commenced on the land is marked "A," and the second place "B."  Shortly before appellee filed his bill, he discovered a place on the farm where there was a bank of loam and sand which he claimed was better suited to his purposes and was more profitable to work than at the other two banks.  This place was about eighty rods distant from the crossing and is marked "C" on the map.  The appellee claimed that there was less stripping at this point, and the quality of the loam was more suitable for some of his particular purposes than that obtained in pits "A" and "B."

The appellee then applied to appellants for permission to obtain what loam he might need from this newly discovered bank, "C."  The appellants, however, refused to give their consent, claiming that he had no right there under the contract, and they did not desire the excavations to proceed at that place.

The lot in which the bank "C" was located was inclosed by a fence with openings as shown upon the map.  It had been used that season for an oat field, and Weeks, the appellee, had never had possession of any portion of such field and had been given no authority to enter such field.  But without any further permission than the contract gave, and against the will of appellants, he took possession of said bank and commenced plowing and scraping there.  Appellants ordered the workmen to cease digging there, and to keep out of such field.  The workmen refused to obey appellants' orders, claiming the right under appellee, who, they claimed, would protect them in so doing.  Thereupon the appellant, John M. Thompson, caused the arrest of one of the workmen by the name of Faulson, upon the charge of trespass, under the

statute. He also caused the gates or opening into the field to be closed. Thereupon and before the trial of the said Faulson appellee filed the bill in this case September 22, 1888, and obtained the injunction, as above stated, and aside from the evidence of appellee and appellant, there was not much evidence in the case to support the bill.

The appellee contends that it would be a great and irreparable damage to be deprived of the privilege of taking out loam at the pit " C," where he claims the right to take out the loam and sand under his contract.

Messrs. C. W. BROWN and FRED BENNETT, for appellants.

Mr. EGBERT PHELPS, for appellee.

LACEY, J. We think the court below erred in holding that the complainant had a cause of action and that equity had jurisdiction to grant any relief whatever. As we interpret the contract the appellants reserved the special right to permit or prohibit any further excavation on the premises except at "the immediate neighborhood of the farm crossing and the Michigan Central Railroad," where a switch was then being placed. This being so, the appellee had no right to remove and commence to excavate at point " C" on the same farm eighty rods distant from the place first designated at point " A " without the consent of appellants. It is contended by appellee that the words in the parenthetical clause of the contract, to wit, " for the convenience of said Weeks and for the well-being of the farm and as may be agreed upon from time to time," does not give appellants the right to arbitrarily and without reason refuse to allow other parts of the farm to be dug over and the sand and loam removed therefrom other than at point " A;" that if the well-being of the farm, as a matter of fact, is considered and observed in the change in the place of excavation the consent of the appellants may be dispensed with entirely. We do not so interpret the contract. The right to refuse the change is expressly reserved by appellants in the contract.

Thompson v. Weeks.

The words in the first part of the contract, which grants to appellee the "exclusive right of using and removing for the purpose of trade, loam and sand from their farm in New Lenox, Will county, Ill., for a term of three years," do not, when read with the coupled conditions, grant to the appellee the privilege to remove such material from the entire farm, irrespective of the subsequent right of appellant to agree or not to agree to any change. The first clause of the contract is specific in limiting the right to change the location of removing material to the agreement of the parties. Courts can not make new contracts for the parties, but must leave it as made by them. But, even if the contract should be so interpreted as that the appellants had no right arbitrarily to refuse assent to a change of the place of excavation, for the purpose of removing sand and loam, so long as the well-being of the farm was observed and considered in so making the change, yet, we are of opinion that a court of equity would have no jurisdiction under the facts as developed by the bill and evidence to grant the relief sought. If the appellee had been refused the privilege to make a change of place in his operations in removing loam and sand in violation of the contract, and to his injury, he had an adequate remedy at law, nor do we see anything in the evidence to show that complete damages could not be recovered in a suit at law in case of a breach of the contract by appellants. But it is insisted here that this suit in equity is in the nature of a bill to enforce a specific performance of a contract and therefore that the court had equity jurisdiction. Let us examine this claim for a moment.

Suppose the appellants had refused the appellee the privilege of removing his operations from the first location to the second one, and forbade him from taking possession of any other part of the farm, and the appellee, instead of taking the law into his own hands, as he did in this case, and taking possession of the desired spot, had filed his bill in equity, asking strictly a specific performance, designating the place where he would compel the assent of appellants to his work, alleging the well-being of the farm was observed in the new selection; would it be contended that a court of equity could entertain

jurisdiction of such a case? We think clearly not. The contract, even in that view, is so vague and uncertain that no court of equity would undertake to enforce a specific performance of it; and then, again, a court of equity, at each subsequent refusal by appellants, might be called upon again and again to construe and enforce it, as vague and uncertain as it is. Where the contract sought to be specifically performed is uncertain in its terms, courts of equity will not undertake to decree its performance, but will leave the parties to their remedy at law. Bowman v. Cunningham, 48 Ill. 78; Fitzpatrick v. Beatty, 1 Gilm. 454; Gosse v. Jones, 73 Ill. 508.

In order to uphold appellee's claim to remove dirt at excavation "C," the court must order a performance of a portion of a contract not agreed upon, and which, if it has any existence at all, is uncertain and difficult, if not impossible, to determine. 2 Story's Eq. Jur., Sec. 793, note A; 2 Wheaton, 290, 236.

If this bill is in its nature one to enforce specific performance, then, as we have seen, a court of equity would not take jurisdiction. But it is insisted that it is not a bill for specific performance, but one simply to restrain appellants from interfering in a case where the appellee was only in the enjoyment of his rights under the contract, and to prevent irreparable injury. We can not think that this case comes within the rule contended for, when its subject and nature is considered. The appellants refused appellee the privilege under the contract to take possession of or excavate at point "C" on the farm. It then became a question of fact to be determined by the court, even under the contention of appellee, whether said point is one that may be worked under the contract, depending upon whether it can be excavated consistently with the well-being of the farm. Appellants deny it and refuse to agree, and appellee has taken possession of it, or proposes to do so, contrary to appellants' will, thus determining the question in dispute for himself, at least temporarily, and tying up the hands of appellants, by this injunction suit, from interfering with him in his work, or by bringing suits, until a final hearing. By the time the cause would be heard the work

Thompson v. Weeks.

would be done at the disputed point, and perhaps irreparable damage caused to the farm, and the court may finally decide that possession was wrongfully taken.   By the time this cause is heard another and another point may be selected, and the same process repeated till finally the farm is ruined, and this by the unwarranted interference of a court of equity.

What is sought to be done by this injunction and bill is, in our opinion, farther from being within the jurisdiction of a court of equity than a bill purely for specific performance. It encourages acts of trespass and the taking the law into his own hands by appellee, by tying appellant's hands by injunction, while the former takes execution of the contract as he interprets it at his own will before hearing.   Thus, by the unwarranted interference of a court of equity, the appellants' farm may be irreparably injured, which ought to be a sufficient test to show that a court of equity ought not to take jurisdiction, as one of the principal grounds of equity jurisdiction is to grant injunctions to *prevent* irreparable injury, while taking jurisdiction in a case like this would be to aid it.   Hence it will be seen that appellee by taking unwarranted possession of the point "C" and excavating there, did not give a court of equity jurisdiction where it would not originally have had it, to enforce specific performance.   The policy of the law is always to discourage parties from taking the law into their own hands, even though it turns out in the end that such party had the right in the case.

For these reasons we hold that the court below erred in retaining jurisdiction and in granting the relief sought.

The decree is reversed and the cause remanded with directions to dismiss the bill.

*Reversed and remanded with directions.*