Loretta Y. LEWIS, Robert F. Shewalter, Charleville Productions, Inc., Lewislor Enterprises, Inc., J.C.P. Corporation and Lewislor Films, Inc., Appellants,

v.

Thomas H. A. LEWIS, Appellee.

Loretta Y. LEWIS, Robert F. Shewalter, Charleville Productions, Inc., and Lewislor Enterprises, Inc., Appellants,

v.

Thomas H. A. LEWIS, Appellee.

J.C.P. CORPORATION and Lewislor Films, Inc., Appellants,

v.

Thomas H. A. LEWIS, Appellee.

Nos. 19944–19946.

United States Court of Appeals Ninth Circuit.

March 14, 1966.

---

Wm. Kumler, Beverly Hills, Cal., for appellants J.C.P. Corp. and Lewislor Films, Inc.

Louis Lee Abbott, Richard B. Cutler, Los Angeles, Cal., for appellants Loretta Y. Lewis, Robt. F. Shewalter, Charleville Productions, Inc. and Lewislor Enterprises, Inc.

James P. Del Guercio, Beverly Hills, Cal., Frank Marcellino, Abberley, Kooiman, Amon & Marcellino, New York City, for appellee, Thomas H. A. Lewis.

Before HAMLEY, KOELSCH and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

These are consolidated interlocutory appeals to review certain orders entered in the pleading stage of litigation involving the business of producing and distributing television films.

The suit was commenced on June 1, 1962, when Thomas H. A. Lewis filed an action against Loretta Y. Lewis and Robert F. Shewalter. Plaintiff rested jurisdiction on diversity of citizenship, as provided in 28 U.S.C. § 1332 (1964), alleging that he is a citizen of the State of New York and defendants are citizens of the State of California.

According to the complaint, plaintiff and Mrs. Lewis, known professionally as Loretta Young, were married on July 31, 1940. About August 1, 1952, while they were husband and wife, the two agreed to engage jointly in the business of producing and distributing television films. Pursuant to this agreement two California corporations were organized, Lewislor Enterprises, Inc., and Lewislor Films, Inc. Through these corporations a successful television series, known as "The Loretta Young Show," was produced and exploited.

Plaintiff and Mrs. Lewis each owned 49.505% of the capital stock of Lewislor Enterprises, Inc., and 45% of the capital stock of Lewislor Films, Inc. The remaining stock of each corporation was owned by Shewalter, an accountant in the employ of both corporations. Plaintiff was president, Mrs. Lewis was vice-president and Shewalter was secretary-treasurer of each corporation. These three were also directors of each corporation.

Plaintiff and Mrs. Lewis separated as husband and wife on June 15, 1956. At that time, as alleged in the complaint, Mrs. Lewis and Shewalter, by means of their combined stock ownership, caused the two named corporations to dismiss plaintiff as president and director. They also procured his discharge as producer of the television series and excluded him from all further participation in the conduct of the business of the corporations. Simultaneously, the name of Lewislor Enterprises, Inc. was changed to "J.C.P. Corporation." According to the complaint, Mrs. Lewis and Shewalter have, since 1956, organized several other California corporations, which they wholly owned and exclusively controlled.[1]

Plaintiff further alleged that, by means of their ownership and control of these new corporations, Mrs. Lewis and Shewalter appropriated to their own individual use and benefit the property of the original Lewislor Enterprises, Inc. and Lewislor Films, Inc. Included in this appropriation, according to the complaint, was the name and good will, offices, employees, files, bank accounts and credit facilities of the original corporations. Since June 15, 1956, plaintiff alleged, these defendants caused the orig-

1. According to the original complaint, these newly-formed corporations are as follows: "Niagara Productions, Inc.," which name was changed on June 22, 1956, to "Lewislor Enterprises, Inc." (this being the second corporation of that name); on May 13, 1957, "Charleville Productions, Inc.," which name was changed on January 24, 1958 to "Lewislor Enterprises, Inc." (this being the third corporation of that name); and on April 28, 1958, "Toreto Films, Inc." and on January 29, 1958, "Toreto Enterprises, Inc."

inal Lewislor Films, Inc. to perform, without compensation, technical services for the second and third "Lewislor Enterprises, Inc.," and caused Toreto Films, Inc. to appropriate for defendants' personal benefit the property and good will of Lewislor Films, Inc.[2]

Plaintiff alleged that, on June 18, 1959, plaintiff and the named defendants, together with certain of these corporations, entered into a written "settlement agreement." Article One, subparagraph 4 of this agreement provides that plaintiff and Mrs. Lewis shall each appoint a certified public accountant to review, investigate and audit the books of account of the corporations. This report was to disclose any matters which either party believed impaired or was inconsistent with their rights as shareholders. Plaintiff further alleged that the accountant appointed by him had been unable to audit the books of account because these books had not been kept in accordance with proper accounting principles, and because the books had been kept as if there was a single enterprise rather than separate corporations, the assets, liabilities, income and expenses having been commingled.

Plaintiff alleged that the manner in which the accounts had been kept was inconsistent with his rights as a shareholder and contrary to the terms of the settlement agreement. According to plaintiff, Mrs. Lewis had caused J.C.P. Corporation to pay substantial sums to her for her personal use and benefit, and she has used other corporate income in an improvident manner, all in violation of the original agreement and the settlement agreement. A provision of the settlement agreement entitling plaintiff to a transfer of thirty per cent of the capital stock of Charleville Productions, Inc., and the third Lewislor Enterprises, Inc. has also not been fulfilled, plaintiff averred.

Plaintiff asked for an accounting, substantially as provided for in the settlement agreement, for defendants' dealings since June 18, 1956, with the property of J.C.P. Corporation and Lewislor Films, Inc. and its products, including the property of the newly-formed corporations. Plaintiff further asked that defendants be adjudged to hold such property and its products upon constructive trust and be ordered to pay over and deliver to plaintiff his just and proper share " * * * as provided in the settlement agreement and as required by law." Plaintiff also asked that defendants be ordered to transfer and deliver to plaintiff certificates of stock representing thirty per cent of the capital stock of Charleville Productions, Inc. and Lewislor Enterprises, Inc. as provided in the settlement agreement.

Defendants moved to dismiss the action, urging a number of grounds, but the motion was denied. Defendants then moved to compel joinder of each of the corporations named in the complaint as indispensable and necessary parties; or in the alternative to dismiss the action for want of indispensable and necessary parties on the same grounds asserted in the previous motion to dismiss. In support of this motion, defendants submitted an affidavit and copies of the settlement agreement of June 18, 1959, and a subsequent agreement of December 31, 1959, contending that they demonstrate that the corporations were indispensable and necessary parties. An affidavit was filed in opposition to the motion. The motion was denied on the ground that the subject matter of the motion had been previously determined by the court in denying the earlier motion to dismiss.

The personal defendants then filed an answer and counterclaim. Many of the allegations of fact contained in the complaint were denied or were explained in a manner which placed them in a new

2. In addition, it was alleged, on or about June 22, 1956, defendants discontinued the entire film producing business of the original Lewislor Enterprises, Inc. (now known as "J.C.P. Corporation"), and con-

fined its business to (a) the leasing of old films produced and owned by the original corporation and (b) the management of certain residential real estate owned by it.

light. Defendants alleged that plaintiff had himself breached the settlement agreement in several respects. Among the nineteen separate defenses stated in the answer it was again alleged that the complaint fails to join as indispensable and necessary parties, the corporations referred to above.

Based on the general allegations of the answer, defendants counterclaimed asking that plaintiff be required to submit certain matters to arbitration as provided for in the settlement agreement, and that he account to Mrs. Lewis with reference to certain assets referred to in various provisions of the settlement agreement. Defendants also asked that plaintiff be required specifically to perform certain provisions of that agreement, and that defendants have judgment for damages resulting from plaintiff's asserted breach of the settlement agreement.

Plaintiff filed a reply to the counterclaim. Pretrial proceedings were then conducted which led to the preparation of an extensive pretrial order approved as to form by opposing counsel. It was not signed by the district judge, but was lodged with the court on December 9, 1963. On July 8, 1964, a district court order was filed reciting as follows:

"Upon motion of the defendants and good cause appearing therefor, the following named corporations are hereby ordered joined as nominal party defendants herein: J.C.P. Corporation, a California corporation; Lewislor Films, Inc., a California corporation; Charleville Productions, Inc., a California corporation; Lewislor Enterprises, Inc., a California corporation."

Lewis then filed an amended complaint in which, in addition to Mrs. Lewis and Shewalter, the four corporations listed in the quoted court order were named as defendants. The allegations of this complaint were substantially the same as those of the original complaint.

Two of the corporations which were made defendants in the amended complaint, Charleville Productions, Inc. and Lewislor Enterprises, Inc., together with Mrs. Lewis and Shewalter, then joined in a motion for an order requiring security for costs, pursuant to California Corporations Code, § 834, their theory being that this was a stockholder's derivative action. J.C.P. Corporation and Lewislor Films, Inc., joined in a similar motion. The hearing originally scheduled on this motion was continued to enable counsel for the parties to submit further memoranda and argument on the question of whether plaintiff's action is solely in his individual right or in part in the right of the above-named corporations. Since the effect of this was to reopen a question which had been determined against defendants in October, 1962, the district court made this possible by vacating the October 10, 1962 order.

The motions for security were thereafter denied. The district court held that while the corporations in question are indispensable parties, plaintiff is seeking relief in his own right, under the settlement agreement, and the action is therefore not derivative in character. The motion to dismiss, originally ruled upon by the court on October 10, 1962, which order was thereafter vacated, was also denied. The court included a recital which made it possible for defendants to take this interlocutory appeal from that order, pursuant to 28 U.S.C. § 1292(b) (1964).

The individual and corporate defendants then joined in two motions to dismiss the action, or in the alternative, for summary judgment on the same grounds. One ground urged in support of these motions was that the district court lacked diversity jurisdiction. In this connection it was stated that Charleville Productions, Inc., Lewislor Enterprises, Inc., J.C.P. Corporation and Lewislor Films, Inc. are indispensable parties, and that, on August 10, 1964, when the action was commenced as to the corporate defendants, the plaintiff and all defendants were citizens of the State of California. Reference was made to a deposition of plaintiff, given on December 23, 1964, in which the latter stated that, since September, 1963, he had been a resident of Beverly Hills, California

and a registered voter thereof since February 14, 1964.

In opposition to the motions, plaintiff asserted that he seeks no relief against any of the corporate defendants, and states that, if in his allegations and prayer for relief he has gone beyond this, " * * * he here and now concedes that the prayer should be specifically restricted to relief against the individual defendants."

The motions to dismiss were denied on March 2, 1965, and these consolidated interlocutory appeals followed. The appeals were taken not only from the order of March 2, 1965, but also from the order of December 21, 1964, denying defendants' motion for security for costs and to dismiss.

We will first direct our attention to the question of whether the corporate defendants named in the amended complaint were indispensable parties when this action was commenced.

Rule 19(a), Federal Rules of Civil Procedure, requires that persons having a "joint interest" in the litigation shall be made parties. Rule 19(b), deals with one class of persons having a joint interest, namely those who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties.[3] As to the latter, Rule 19(b), generally speaking, leaves the matter of joinder to the discretion of the court. Since indispensable parties are not included under Rule 19(b), the court, has, in effect, been denied discretion as to them—they must be joined. Consistent with this construction, failure to join an indispensable party is an express defense under Rule 12(b) (7), Federal Rules of Civil Procedure.

 The governing principles to be applied in determining whether a person is an indispensable party, as stated in State of Washington v. United States, 9 Cir., 87 F.2d 421, 427–428, are set forth in the margin.[4] With these principles in mind we turn to a consideration of the relief plaintiff sought in his original complaint.

That pleading indicates that plaintiff asserted rights of three kinds. One of these had to do with his rights under his original agreement with Mrs. Lewis, dated August 1, 1952. Another had to do with his rights as a shareholder of J.C.P. Corporation. The third had to do with his rights under the settlement agreement of June 18, 1959.

Of these three kinds of rights asserted, that which is predicated upon the settlement agreement, is the most basic to this lawsuit. That agreement, generally speaking, was designed to restate in precise terms most of plaintiff's rights deriving from the original agreement and his position as a shareholder of J.C.P. Corporation. The breaches primarily alleged are of provisions of the settlement agreement. The relief sought, in large

---

**3.** This class of persons is usually referred to as "necessary," as distinguished from "indispensable" parties. Professor Moore prefers to call them "conditionally necessary" parties. 3 Moore's Federal Practice § 19.05[2], at 2145 (2d ed. 1964).

**4.** "There are many adjudicated cases in which expressions are made with respect to the tests used to determine whether an absent party is a necessary party or an indispensable party. From these authorities it appears that the absent party must be interested in the controversy. After first determining that such party is interested in the controversy, the court must make a determination of the following questions applied to the particular case: (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?

"If after the court determines that an absent party is interested in the controversy, it finds that all of the four questions outlined above are answered in the affirmative with respect to the absent party's interest, then such absent party is a necessary party. However, if any one of the four questions is answered in the negative, then the absent party is indispensable." (Footnote omitted.)

part, is that which plaintiff asserts he is entitled to under the express terms of that agreement.

The settlement agreement is a contract between Mr. Lewis, Mrs. Lewis, Shewalter, J.C.P. Corporation, Lewislor Films, Inc., Charleville Productions, Inc., and Lewislor Enterprises, Inc. Article One, subparagraph 4 of that agreement provides for " * * * review, investigation and/or audit * * * " of the books of account of the corporate parties to the agreement. This subparagraph further provides that any individual party to the agreement may notify the board of directors of any of the corporations audited of any matters disclosed by the audit which the party believes impair or are inconsistent with that individual's right as a shareholder. In this event, negotiations between the parties are required which, if unsuccessful, bring into play an arbitration provision of the subparagraph.

Plaintiff alleges that he was denied such a post-agreement audit and he prays that the personal defendants be ordered to account to the plaintiff as provided in the settlement agreement, "and as required by law," for their dealings since June 18, 1956, with the property of J.C.P. Corporation and Lewislor Films, Inc. But, as we view the original complaint, the contemplated accounting would not be limited to those corporations, for the property dealings to be inquired into would include such products of those corporations as have come into the hands of Charleville Productions, Inc., Lewislor Enterprises, Inc., Toreto Enterprises, Inc., and Toreto Films, Inc. Among the specific matters which would be considered, according to this prayer would be good will, corporate opportunities, profits derived from the production, distribution, sales, licensing and re-runs of television films, sales of stock, contracts of employment and the rents, gains and profits of J.C.P. Corporation from real property.

Another prayer of the complaint asks that the personal defendants be adjudged to hold " * * * such property and

its product as aforesaid upon constructive trust and be ordered to pay over and deliver to the plaintiff his just and proper share thereof as provided in the settlement agreement and as required by law." The property and its product thus referred to, it seems to us, necessarily includes that property and product of J.C.P. Corporation and Lewislor Films, which has come into the hands of the personal defendants or of the other named corporations, as a result of the personal defendants' dealings with J.C.P. Corporation and Lewislor Films, Inc.

It is thus seen that, predicated upon an agreement to which all of the corporations in question are signatory, plaintiff seeks, among other things, a thoroughgoing examination of all of their corporate books and records, and the imposition of a constructive trust, for his benefit, on properties which they, as well as the personal defendants, may hold.

Applying the principles stated in State of Washington v. United States, quoted in note 4, we think the conclusion is inescapable that, so construing the original complaint, all of these corporations were indispensable parties from the outset of the litigation. Each has an interest in the controversy which is not distinct and severable from that of the personal defendants. The court could not render justice between the personal parties, in the absence of the corporate defendants, for in their absence the court would be without power to order the corporations to account, nor could it impose a constructive trust upon any of their properties. Moreover, in the absence of the corporations, a determination involving relief of this kind would not be consistent with equity and good conscience because it would not protect the rights of corporate creditors.

With this question decided against plaintiff, his position is weakened considerably. The action was subject to dismissal for failure to join indispensable parties, until the amended complaint was filed on August 10, 1964. While the allegations of that pleading were essen-

tially the same as those of the original complaint, the effect thereof was, for the first time, to state claims against the corporate defendants, for it was not until then that they were joined as defendants.

By then, however, plaintiff had moved to California, where all of the defendants, personal and corporate, had their citizenship. Plaintiff's change of citizenship did not oust the district court of diversity jurisdiction insofar as the claims asserted against the personal defendants are concerned. Morgan's Heirs v. Morgan, 2 Wheat. 290, 15 U.S. 290, 4 L.Ed. 242. But since no action was stated against the newly-joined corporate defendants until plaintiff changed his state citizenship, no diversity jurisdiction has ever existed as to those defendants.

Some reference has been made in the briefs to Rule 15(c), Federal Rules of Civil Procedure, which provides that whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. This rule is addressed primarily to statute of limitations problems. United States for Use of Atkins v. Reiten, 9 Cir., 313 F.2d 673, 675. But even under that rule, an amended pleading does not relate back insofar as it states claims against newly-joined defendants. See Hoffman v. Halden, 9 Cir., 268 F.2d 280, 304; Wynn v. Kelley, D.C.D.C., 223 F. Supp. 875, 876, aff. Potomac Elec. Power Co. v. Wynn, 120 U.S.App.D.C. 13, 343 F.2d 295.

It follows that the district court did not acquire diversity jurisdiction over the corporate defendants. Yet, in view of their indispensability, the cause, as stated in the original complaint and the amended complaint, cannot proceed without them. Faced with this dilemma, the district court had no other choice but to dismiss the amended complaint.

Despite the form of his pleadings, however, plaintiff asserts that he seeks no relief against any of the corporate defendants. He asks that the prayer of his complaint be specifically restricted to relief against the individual defendants and, that being done, asks for dismissal as to the corporate defendants.

In the light of this statement and in view of all the circumstances of the case, we think plaintiff should be afforded an opportunity to file a second amended complaint limited to a claim against the personal defendants based on an asserted breach of the settlement agreement, and seeking damages.

He may not, however, seek an accounting from the personal defendants, and the imposition upon them of a constructive trust, based on the theory that they had improperly received properties of J.C.P. Corporation or any of the other named corporations. Relief of this kind would be derivative in nature and could only be obtained in an action in which those corporations were parties. This is true notwithstanding the fact that, in the settlement agreement, the personal defendants may have agreed not to take the properties of the corporation. This was already their duty as shareholders and officers of the corporation and if they have breached that duty, corporate creditors have been prejudiced. A shareholder's derivative action would protect their interests in this event; a sharing between plaintiff and the personal defendants of corporate property improperly taken, would not.

If plaintiff files such an amended complaint, together with a motion to dismiss the corporate defendants, the action will be reconstituted in a manner which will avoid the jurisdictional problem. If no such amended complaint is filed, the action should be dismissed.

The question involving the statute of limitations is reserved in view of the fact that new pleadings may be filed.

Reversed and remanded for further proceedings consistent with this opinion.