Firth *v.* Firth.

## Fred. W. Firth

*v.*

## Lizzie Firth.

1. The petitioner in a suit for divorce must, to entitle himself to a decree, where the only ground of jurisdiction is that he was a resident of this state when he brought his suit, prove that fact by clear and convincing evidence. If the evidence leaves it in serious doubt, the court will refuse to act.

2. The domicil of origin is retained until another is acquired.

3. After a person has abandoned his domicil of origin, his domicil will be considered to be in that place in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with a present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home.

4. The actual intention of the person whose domicil is in dispute is in most cases a fact of great importance, but the best and most trustworthy evidence of it is found, as a general rule, in his acts rather than in his declarations.

On *ex parte* hearing on petition, master's report and proofs taken before a master.

*Mr. Silas W. De Witt,* for petitioner.

Van Fleet, V. C.

This is a suit for divorce by a husband against his wife for adultery. The crime charged has been proved. If the only question presented was whether or not the defendant's guilt had been established, the case could very easily be decided. But it presents another and much more troublesome query, namely: Had the petitioner, when he brought his suit, a right to sue for a divorce in this state? or, stated in another form, Has this court power, on the facts of the case as they appear in the proofs, to dissolve his marriage with the defendant? The decisive question of the case is one of jurisdiction.

The parties were married in Iowa. Though they lived together as husband and wife for nearly three years—from June 13th, 1886 (the date of their marriage), until May, 1889—they

were never, during that period, in this state, either together or separately. The adulterous acts proved were committed in. Chicago, Illinois. The defendant has been proceeded against as. an absent defendant, resident in Illinois, and has been brou;ht into court by notice published and served through the mail as. required by the usual order of publication. Under this state of facts it is manifest that the only ground of jurisdiction on which, a decree in favor of the petitioner can rest is, that he was a resident of this state, having his domicil here when he brought this. suit. It is only on the ground that he is a citizen of this state, and as such entitled to the rights and remedies which its laws. confer, that this court may, in the rightful exercise of its powers,. ascertain, fix and declare his matrimonial *status* The rule of jurisdiction in such cases was defined by Chancellor Zabriskie,. in *Coddington* v. *Coddington, 5 C. E. Gr. 263, 264,* as follows :. " Proceedings with regard to the validity or dissolution of marriage are, as was held in the celebrated case of the Duchess of. Kingston, proceedings *in rem.* They actually operate upon the. matter ; they affirm, constitute or dissolve the marriage relation.. By the well-settled principles of the *jus gentium,* or rules acknowledged by the codes of all civilized nations, and given effect by comity of law when not controlled by positive enactments, the. position and relative *status* of every person is regulated by the. law of his domicil." The domicil of origin is retained until another is acquired. After a person has abandoned his domicil of origin, his domicil will be considered to be in that place in. which he has voluntarily fixed his habitation, not for a mere. temporary or special purpose, but with a present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other. permanent home. *Harral* v. *Harral, 12 Stew. Eq. 279, 285.*

The controlling question of the case then is, Was the petitioner a citizen of this state, having his domicil here, when he brought this suit ? His petition was sworn to at Salt Lake City, Utah,. on the 22d day of October, 1891, and filed on the 31st day of the same month. The first evidence he gave in the case as a witness was given at the same place on the 19th day of March, 1892,.

under a commission issued by this court. The reason he assigned in his affidavit to obtain the commission, why he could not give his evidence in this state, was that he was then located in Salt Lake City in connection with the Denver and Rio Grande railroad, and it was, consequently, impossible for him to leave the west and come east, and he was unable to say when he could get away from his work, which at that time confined him there. In giving his evidence under the commission, in reply to an interrogatory put to him in these words, "Where is your place of residence, and how long have you resided there?" he said, "Phillipsburg, New Jersey; I have resided there since 1863." When the case was first presented for consideration, the above question and answer embraced all the evidence there was going to show where the petitioner was domiciled when he brought this suit. As it was manifestly insufficient to prove the only fact which authorized the court to take jurisdiction of the suit, being, when viewed in its legal aspect, simply the statement of a conclusion, unaccompanied by the specification of a single fact tending to show that it was well founded, the petitioner was given leave to take further evidence. Since then he has returned to this state, and has been further examined on the matter under consideration. He gave his evidence before the special master to whom the cause had been referred to take proofs and make a report.

From the proofs now in the case, it appears that the petitioner was born at Phillipsburg, in this state, about 1863, and continued to live there until 1884, when he left and went to Nebraska, and afterwards to the Bermuda Islands, and remained absent until the *early part of 1885*. He then returned and remained here *for a short time*, but left again in the *spring of 1885* and went to Nebraska. His father died of phthisis or consumption over twenty years ago. This disease is supposed to be hereditary in the family. Up to the time the petitioner left in 1884 he had been a member of his mother's family, living with her in the homestead house, where she and her husband had lived up to the time of his death, and where she continued to live with her children after her husband's death. The petitioner, it will be ob-

served, had attained his majority shortly before he left in the spring of 1885. He went away then, he says, on account of his health—in search of a climate less dangerous to a person predisposed to pulmonary diseases than that of this state. From the spring of 1885 he was continuously absent from this state and in the west, at Omaha, Denver, and Salt Lake City, until December, 1890. For the major part of this period, I judge from his evidence, he was employed as a clerk in the auditor's department of the Denver and Rio Grande Railroad Company. He says he was so employed for a year in Denver; then, in April, 1890, the office was transferred to Salt Lake City and he went with it, and continued to be employed in it up to December, 1890. He then came east to Phillipsburg and remained in the east until March, 1891, when he returned to Salt Lake City and resumed work in the same office, and was still at work there when he swore to his petition on the 22d day of October, 1891, and also when he gave his evidence under the commission on the 19th day of March, 1892.

So that it appears, from the petitioner's own testimony, that the facts as to his actual habitancy for the six years and six months intervening between the time when he left this state, in the spring of 1885, and the time when he filed his petition on the 31st day of October, 1891, are, that for three months of the six years and six months he was an inhabitant of this state, and that for the other six years and three months his place of actual habitation was without this state, and in the States of Nebraska and Colorado and Territory of Utah. He says, however, that he always considered and spoke of Phillipsburg as his home; wrote it as his place of residence on hotel registers; when he married in June, 1886, he gave that as his residence, and that he never paid poll tax in the west, nor voted anywhere except at Phillipsburg. But he does not tell when he voted at Phillipsburg. He certainly did not after the spring of 1885. He also says that there was a room in his mother's house which was called his, where he kept pictures, books, shells and other like things up to the time of his mother's death in January, 1892, when these things were removed to his brother's house in Phil-

lipsburg, where they have since remained. As already stated, he and the defendant were married on the 13th day of June, 1886, at Red Oak, Iowa, and lived together thereafter, as husband and wife, continuously until May, 1889. The petitioner says he and his wife never kept house, and stops there. He does not tell where they made their abiding place or home—where they ate, slept and surrounded themselves with such things as their relation, comfort and position required them to have. In May, 1889, the defendant left the petitioner to visit her uncle in Chicago. The petitioner procured passes for her journey. After she reached Chicago she refused to return. The petitioner says she first wrote that she would have nothing more to do with him, and that afterwards he called on her in Chicago and urged her to return and she refused. The foregoing statement embraces, as I believe, every fact entitled to the least consideration in determining the question now under consideration.

The decision of questions of disputed domicil are frequently surrounded with a great many practical difficulties. The evidence is often obscure, equivocal and contradictory. The acts or conduct of the person whose domicil is the subject of dispute will, in many cases, seem to indicate with certainty that his residence must have been in one place, while his declarations go to show that it was in another. That is the case here. If we look at the petitioner's acts alone, and remember that he left just after he had attained the age when he was at liberty to go where he pleased, engage in any pursuit he saw fit, and establish a new home for himself; that he went in search of a more genial climate, in order to protect himself against a disease which it was believed he had inherited, and which it was feared would surely claim him as its victim if he remained here; that he found such a climate, together with steady and pleasant employment; that within a little over a year after he went away he married, and thus placed himself in a position where a home, in which he might set up his household gods, became, unless he is strangely different from other men, the natural desire of his heart; that although he lived with his wife for nearly three years, she and he were never, during that time, at his home of origin in this

state; that he remained continuously absent from this state for over five years and six months, and that shortly after he came here in December, 1890, he returned to Salt Lake City, and at once, on his return, resumed the work he was doing when he left, and that he was still there, engaged in the same work, on the 31st day of October, 1891, when he swore to his petition in this case, the conclusion would seem to be well nigh unavoidable that he had abandoned his domicil of origin and established a new home. He swears, on the contrary, that he did not, but that his intention has always been to retain his domicil of origin. The actual intention of the person whose domicil is in dispute is, in cases of this kind, a fact of great importance, but the best and most trustworthy evidence of it is found, as a general rule, in his acts rather than in his declarations. His declarations may be competent as evidence of his intentions, but they are by no means conclusive, and when they are contradicted by decisive acts of habitancy, as holding office, voting and the like, their probative force is very light. In two cases, decided by the supreme court of Massachusetts in 1879, it appeared that the two persons whose domicils were in dispute had, as they testified, made up their minds to change their permanent residences from Boston to Nahant, and that they subsequently gave notice, in writing, to the taxing authorities of Boston that they had done so, but it likewise appeared that, after the alleged change, though they spent a part of their time at Nahant, they continued, for a part of each year, to occupy dwellings in Boston which were more in keeping with their means and position than those they lived in while at Nahant, and that acts of habitancy had been performed at both places. The jury found they were domiciled in Boston, and the court, after hearing the case on exceptions, ordered judgments to be entered on the verdicts, declaring that the evidence of the parties as to their intention was not conclusive, but their acts must also be considered. *Wright* v. *Boston, 126 Mass. 161; Weld* v. *Boston, 126 Mass. 166*.

My consideration of this case has led me to the conclusion that the decided weight of the evidence tends rather to show that the petitioner was not a resident or citizen of this state when he

brought his suit than that he was; or, at least, that the evidence leaves his claim in that regard in a state of so much doubt and uncertainty that the court should not in a case like this, where the fact of citizenship constitutes the sole ground of jurisdiction, make a decree attempting to fix and declare his matrimonial status.

The petition must be dismissed.