CASE 50—PETITION ORDINARY—OCTOBER 20.

## Allen vs. Thomas.

APPEAL FROM SHELBY CIRCUIT COURT.

The party for whose sole benefit a contract is evidently made, may sue thereon in his own name, although the engagement be not directly to or with him.

T. placed in the hands of A. a sum of money, for which the latter executed a receipt, in which he undertook to deliver the sum to M. on his arrival in Nicaragua, and the receipt was enclosed in a letter addressed to M., who had died before A. reached there, and he failed to comply with his undertaking. *Held*—that the legal presumption, in the absence of extraneous facts to repel it, is, that the money belonged to M.; and the right of action for its recovery is exclusively in his personal representative, whether the writing be considered as having the effect of a sealed instrument or merely that of a simple contract.

T. B. & J. B. COCHRAN, for appellant, cited *Story on Bailments*, sec. 103 ; *Story's Eq. Jur.*, sec. 1041 ; 1 *Met.*, 499.

BROWN & WHITAKER, for appellee, cited *Story on Bailments*, section 210 ; 4 *J. J. Marshall*, 207 ; 1 *Chitty's Pleading*, 3, 4, 6, 8, *and note*.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

Thomas brought this action against Allen, to recover three hundred dollars, which it is alleged the latter received from the former through his agents in New Orleans, to be delivered by the defendant to Capt. William Mason in Nicaragua. It is further alleged, that the defendant undertook to deliver this sum of money to Mason, but that Mason was dead at the time the defendant received it, of which fact the plaintiff was at the time ignorant, and that the defendant did not deliver the money to Mason, nor, although requested so to do, has he returned it to the plaintiff.

The defendant in his answer admits that he received from an individual in New Orleans three hundred dollars, to be by him delivered to Mason in Nicaragua, but he says that upon his arrival there Mason was dead, and he therefore sent the money back to the person from whom he received it; that he does not know or have information sufficient to form a belief,

that Mason was dead when he received the money in New Orleans, and denies that he received it from the plaintiff, or his agents in New Orleans; that the money never did belong to the plaintiff, but that it was made up by a subscription among certain individuals, for the benefit of Mason, and the subscribers of the fund are entitled to it if the defendant is responsible for it, which he denies.

On the trial the plaintiff proved that his agents in New Orleans, by his directions, placed in the hands of the defendant the sum of money mentioned, for which the latter executed a receipt, in which he undertook to deliver the same to Mason on his arrival in Nicaragua; that this receipt was enclosed in a letter addressed to Mason; and that Mason had died before the defendant arrived in Nicaragua. But there was no proof that Mason was dead at the time the money was placed in the hands of the defendant.

A verdict and judgment having been rendered in favor of the plaintiff for the amount claimed, the defendant has appealed.

The question to be determined is, whether, upon the facts set forth in the petition, and proved on the trial, the appellee was entitled to a recovery.

There is no dispute as to the conditions upon which Allen received the money, nor as to the stipulations contained in the receipt which he is proved to have executed at the time. He covenanted, in that receipt, to deliver to Mason, in a foreign country, the sum placed in his hands for that purpose. Assuming, as must be assumed, upon the facts appearing in the record, that Allen failed to comply with this undertaking, the inquiry arises, in whom was the legal right of action to recover for such failure? Was the right of action in the appellee, or in Mason or his personal representative?

The doctrine is now well settled, that the party for whose sole benefit a contract is evidently made, may sue thereon in his own name, although the engagement be not directly to or with him. The rule as laid down by Chitty is, if the covenant in a deed-poll be *generally*, "to pay B," or be expressly *with him* to pay the money *to him*, there appears to be no difficulty in his

maintaining an action in his own name, although he did not execute the deed, and was in all other respects a stranger to it. (1 *Chitty on Pleading*, *page* 4, *and the authorities*, *English and American*, *cited in the notes.*)

The same principle was expressly recognized by this court in the case of *Smith vs. Lewis*, (3 *B. Mon.*, 230,) in which Lewis executed a writing acknowledging that he had received of Smith certain sugar and coffee, which he promised to deliver to Wooldridge & Sweeny, in Green county. It was held that ‚Smith could not maintain an action of covenant upon the face of this writing, for a failure to deliver the ˙articles as stipulated; that on a simple contract, the party legally entitled to the interest involved should sue for a breach; and a general consignment, nothing else appearing, imports that the consignee is the *owner* of the property, and therefore the contract to carry is, *prima facie*, presumed to have been made with him; that nothing extraneous appeared in the case, and therefore it was to be inferred that the consignees were the *owners*, and not mere *bailees*. Consequently, and especially as the writing did not expressly import a promise to Smith, he could not maintain an action on it, had it been—as it would have been at common law—a simple contract; and although the contract was a covenant under the statute of 1812, still, upon the principle suggested, it implies that the consignees were the owners of the goods. The instrument was therefore construed to be a covenant *to the consignees*, through the consignor, as their presumed agent in obtaining it, for it was not expressly with the consignor, but only acknowledges a receipt of the goods from him, and therefore may be understood to be a covenant *to* and *with* the consignees, and for a breach of it the legal right of action was in them. (See *also*, *to the same effect*, *Story on Bailments*, *section* 103.)

It seems to us that the principles settled in this case are conclusive of the question before us. Here nothing extraneous appears to repel the legal presumption arising on the face of the writing, as proved by all the witnesses who speak of it, that Mason was the owner of the money which Allen agreed to deliver to him. Indeed this presumption is fortified by the

circumstance that the receipt containing the undertaking of Allen was transmitted to Mason. The consequence is that Thomas failed to show himself entitled to any interest, legal or equitable, in the money sued for, but that Mason must be regarded as the real and sole owner of the fund, and for the alleged breach of Allen's agreement to deliver it to Mason, or to his personal representative, the right of action was exclusively in the latter, whether the writing be considered as having the effect of a sealed instrument or merely that of a simple contract.

What effect the death of Mason, prior to the delivery of the money to Allen, might have had upon the rights of the parties to the contract, it is not material to consider, as the allegation of that fact was denied, and not proved.

The judgment is therefore reversed, and the cause remanded for a new trial and further proceedings not inconsistent with this opinion.