## JOHN H. WRIGHT vs. CITY OF BOSTON.

Essex. Nov. 7, 8, 1878. — Jan. 21, 1879. ENDICOTT & LORD, JJ., absent.

In an action against a city to recover the amount of a tax assessed on the personal property of the plaintiff on May 1, 1876, and paid under protest, there was evidence that he acquired a domicil in the town of B., which he retained until 1870; that in that year his father, with whom he had previously lived, moved to the town of N. and died in 1874; that the plaintiff, since 1870, had lived for some time each summer in a small house in N. with his brothers and sisters, which was owned by him and them, after his father's death; that, in 1872, his wife acquired a large estate in the city, with a house on it; that he had bought much land about it, and had since inhabited it exclusively except when at N.; that in this house were all his furniture, books and pictures. The plaintiff testified that when he left B. he intended to make N. his home, and that he never intended to make the city his home. *Held*, that there was evidence to warrant a verdict for the city.

On the issue whether a party to a suit had his domicil in a certain city on the first day of May, his declarations as to his residence in a letter by him to the assessors of the city, in reply to a circular sent to him by them; deeds in which he was grantor, describing him as of another place, one of which was to the city as grantee; his will, in which he was described as in the deeds; and the will of his father, in which he was so described, are all inadmissible in his favor.

CONTRACT to recover the amount of a tax assessed on the personal property of the plaintiff, on May 1, 1876, and paid by the plaintiff under protest.

Trial in this court, before *Gray*, C. J., who reported the case for the determination of the full court, in substance as follows:

The testimony of the plaintiff, who was the only witness in the case, tended to show that in 1858 he acquired a domicil in the town of Brookline, which he retained until the year 1870; that in 1869 he made a tour in Europe with his family, and returned in October, 1870, at which time his father, with whom he had always previously lived, had removed to Nahant; that in 1869 he sent notices to the assessors of Brookline and of Nahant, that he had removed to Nahant; that he had since spent some time, in the summer only, at a house in Nahant, which was of one story, with three attic chambers in a cottage roof, originally owned by the father, and, after his death in 1874, by the plaintiff, his two brothers and two sisters, and was managed, and all the furniture therein owned, by the two sisters; that in 1872 the plaintiff went to Nahant before May 1, but did not remain

there continuously, and returned to Brookline in July; that in the subsequent years before May 1, 1876, he stayed at Nahant but a very short time in each year; that when at Nahant he stayed a good deal more with his father-in-law, as a guest, than at this house; and that it was unoccupied and closed, and the windows and doors securely boarded up, during the whole of each year, except the period in summer when it was occupied by the plaintiff or his brothers or sisters.

He also testified, that in July 1872 the father of his wife gave her as a present a valuable estate, including a large house of two full stories, with a third story in the mansard roof, and having eleven chambers, and with extensive stables and out-houses, in the town of Brighton, which became a part of Boston on January 1, 1874; that between July and December 1872 he spent much money in enlarging and improving this house and fitting it for occupancy by his family; that since December 1872 he occupied this house with his family, whenever he was not at Nahant, and owned all the furniture there, and had made large purchases of lands adjacent, and spent large sums of money in beautifying and adorning this house and lands.

It was admitted that the house in Brighton was very much finer and more valuable than that at Nahant; and that the house and grounds at Brighton were peculiarly adapted for occupation in summer as well as in winter, with lawns, ponds, shade trees, arbors, walks and seats; that his occupancy of it was not shared with any other than his own immediate family, that his books and pictures were in his Brighton house, and that it was the only exclusive residence of himself and family; and that since 1862 he had been continuously, and still was, in active business in Boston, and had never been in business in Nahant.

The defendant contended that the plaintiff acquired a domicil in Brighton or Boston at some time after the conveyance of this house and land to his wife, and prior to May 1, 1876; and the plaintiff contended that he had had his domicil at Nahant since his return from Europe in 1870; and he testified that when he left Brookline he intended to make Nahant his home, and that he never had any intention to make Brighton or Boston, or any other place, his home.

The following documents were offered in evidence by the

plaintiff, and excluded: 1. A letter dated May 3, 1876, from the plaintiff to the assessors of Boston, in reply to a printed circular dated May 1, 1876, addressed to him by them, in which he stated that he had been a resident of Nahant for several years, and not of Boston. 2. Several deeds in which he was grantor and was described as " of Nahant in the county of Essex," one of which was dated March 24, 1876. 3. A deed from himself to the city of Boston, dated March 26, 1875, describing himself in like manner. 4. A will executed by himself on August 10, 1874, in which he was described as of Nahant, which it was agreed had been revoked by another will executed in 1877, and had been cancelled since such new will was made. 5. The will and several codicils of his father, John S. Wright, in which the testator was described as of Brookline in such of them as were made before 1870, and of Nahant in the residue, the last being dated in March, 1873.

The plaintiff contended that, as it was uncontroverted that in 1870 the plaintiff had his legal domicil in Brookline, there could be no new domicil acquired in Boston or Brighton without the intention of the plaintiff, and that as intention without acts was insufficient to work a change of domicil, so acts without intention were equally ineffectual; and therefore requested the judge to rule, that upon all the evidence the jury would not be authorized in finding that the plaintiff, on May 1, 1876, had a domicil and was legally taxable in Boston. But the judge ruled that there was evidence which would authorize the jury in finding that he had such domicil in Boston as to justify the assessment of the tax in question; and submitted the case to the jury under instructions to which no exception was taken. The jury returned a verdict for the defendant.

If any of the evidence excluded should have been admitted, or if the ruling above requested should have been made, a new trial was to be had; otherwise, judgment on the verdict for the defendant.

*S. B. Ives, Jr. & S. Lincoln, Jr.*, for the plaintiff.

*H. W. Putnam*, for the defendant.

MORTON, J. The question whether the plaintiff had his domicil or home in Boston on May 1, 1876, was a question of fact to be determined by the jury under proper instructions. It

involved an inquiry as to the acts of the plaintiff and the intention with which such acts were done. His testimony as to his intention was not conclusive. So much of the evidence as is reported shows acts of the plaintiff which have a strong tendency to prove that he had established his home in Boston before May 1, 1876. It was for the jury to determine, upon all the evidence, what was the intention of the plaintiff. The court therefore properly refused the request to direct a verdict for the plaintiff.

The other exceptions relate to the exclusion of certain evidence offered by the plaintiff.

It is a general rule of evidence, applicable in cases of this character as well as in others, that the declarations of a party are not admissible in his own favor. Such declarations are not made under oath, and are mere hearsay evidence. There is an established qualification of this rule, that, where an act of the party is admissible in evidence, any declaration accompanying and giving character to the act is competent. This is upon the ground that the declaration is a part of the act, or in other words is a part of the *res gestæ*. But such declarations are only admissible when the acts of which they are a part are competent. *Lund* v. *Tyngsborough*, 9 Cush. 36. *Salem* v. *Lynn*, 13 Met. 544. *Cole* v. *Cheshire*, 1 Gray, 441. *Monson* v. *Palmer*, 8 Allen, 551. *Kilburn* v. *Bennett*, 3 Met. 199. *Thorndike* v. *Boston*, 1 Met. 242.

Applying these principles to the case at bar, we are of opinion that the evidence offered by the plaintiff was rightly excluded.

The declarations contained in his letter of May 3, 1876, to the assessors of Boston, were not admissible. They were mere declarations in his own favor, not accompanying any act which was admissible in evidence.

The same is true of the declarations in the deeds made by the plaintiff, in which he described himself as " of Nahant." The deeds did not relate to any transaction which was material or admissible in evidence, and the declarations therein were therefore incompetent. One of the deeds was to the city of Boston, but the same rule applies to it. The acceptance of a deed by a grantee is slight evidence that the description of his residence therein is correct. He is presumed to know his own residence, and to have an interest in having it correctly stated. But a grantee

cannot be presumed to know the residence of the grantor, and his acceptance of the deed, therefore, cannot be held to be an implied admission that the grantor's residence is correctly stated.

The description by the plaintiff of himself as " of Nahant," in his will executed in August 1874, was for the same reasons inadmissible. It was merely his declaration in a transaction which was immaterial and incompetent.

The plaintiff relies upon the case of *Wilson* v. *Terry*, 9 Allen, 214. That case is not very fully reported, but it is evident that the court did not intend to overrule the cases previously decided, which we have cited above. The declarations of the defendant's testator, which were held to be admissible, were in regard to the occupation of his farm and to the subject of voting; and, upon referring to the original bill of exceptions, it appears that most, if not all of them, were made at the time when he removed to Freetown. That the fact was assumed to be so is evident from the court's citing with approval the cases of *Thorndike* v. *Boston*, *Kilburn* v. *Bennett*, and *Salem* v. *Lynn*, above referred to, in all of which the doctrine is clearly recognized that a party cannot give in evidence his own declarations in his favor unless they accompany some act which is itself competent evidence, and are thus part of the *res gestæ*. It is clear that the court considered that these declarations fell within this rule.

In regard to the decision in that case, admitting the will of the defendant's testator, we are unable to see how it can be upheld, consistently with the previous decisions. This decision was apparently made upon the authority of *Ward* v. *Oxford*, 8 Pick. 476. In that case, the question was as to the settlement of a pauper, who, it was claimed, derived his settlement through his father from his grandfather. It was held that, as evidence tending to show that the settlement of the grandfather was in Oxford, office copies of a deed and a will made by the grandfather more than seventy years before the trial, in which he described himself as " now resident in Oxford," were admissible. The declarations admitted were not the declarations of a party to the controversy. Though such evidence may be competent in proof of an ancient transaction, in regard to which, as in questions of pedigree, the rule against hearsay evidence is relaxed, the case cannot be regarded as an authority to the point that the

recitals in a recent deed or will are competent evidence in favor of the party making them, in a suit against him or his executor.

The case of *Wilson* v. *Terry* differs from the case at bar in the fact that the testator whose will was admitted had died, leaving the will unrevoked. But we are not able to see how this fact furnishes a valid ground for any distinction in principle. Upon an examination of the adjudications in this Commonwealth, we are brought to the conclusion that this case, at least so far as regards the admission of the will, is in conflict with the current of the authorities. As observed by Mr. Justice Metcalf, in *Capen* v. *Barrows*, 1 Gray, 376, 380, " an occasional wrong application of a principle is not a strange thing in jurisprudence; nor does it weaken either the principle itself, or the obligation of courts to adhere to it."

We are therefore of opinion, that the chief justice rightly rejected the will and the several deeds offered by the plaintiff at the trial.

The only other exception which the plaintiff insists upon is that to the exclusion of the will of his father in which he describes himself as " of Nahant." It is a sufficient reason for the rejection of this evidence, without considering others, that the residence of the father was not involved in the issue on trial, and was an immaterial fact.            *Judgment on the verdict.*