## JAMES VILES *vs.* CITY OF WALTHAM.

Middlesex.   November 15, 1892. — January 4, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Action to recover Tax on Personalty — Domicil — Declarations as a Part of the Res Gestæ.*

To acquire a domicil there must be a residence in a place, and an intention to make that place one's home.

Declarations of a person accompanying a change of his abiding place have always been held competent to explain the change as a part of the *res gestæ;* but declarations in such cases are often admissible on a broader ground than as a part of the act of removing from one place to another. The intention of the person removing is competent to be proved as an independent fact, and anything which tends to show his intention in making the change may be introduced if it is free from objection in other particulars. The intention may be inferred from acts and conduct, and conduct which tends to show the intention is competent for that purpose. Declarations which indicate the state of mind of the declarant naturally have a legitimate tendency to show intention.

When one has changed his place of abode, and the question arises whether he intended to change his domicil, all his acts and conduct which fairly indicate his purpose in that particular within a reasonable time before and after the event may be put in evidence, together with the declarations accompanying such acts.

KNOWLTON, J.   The question at issue is whether the domicil of the plaintiff was in Waltham on May 1, 1890, and the only exceptions relate to the introduction of evidence bearing on that issue.   There was no dispute at the trial that his domicil was in Waltham until April 28, 1890, when he started for Chicago, arriving there the following day.   It was also in evidence that he afterwards dwelt in Chicago, and had his principal place of business there.

To acquire a domicil there must be residence in a place and an intention to make that place one's home.   To maintain his suit the plaintiff was required to prove, not only that he took up his abode in Chicago, but also that he did it with the intention of giving up his home in Waltham and acquiring a home in Chicago.   The change in his place of abode might be temporary or permanent.   It might indicate a change of domicil or not, according to the circumstances attending it.   Declarations of a person accompanying a change of his abiding place have

always been held competent to explain the change as a part of the *res gestæ;* but declarations in such cases are often admissible on a broader ground than as a part of the act of removing from one place to another. The intention of the person removing is competent to be proved as an independent fact, and anything which tends to show his intention in making the change may be introduced, if it is free from objection in other particulars. The intention may be inferred from acts and conduct, and conduct which tends to show the intention is competent for that purpose. Declarations which indicate the state of mind of the declarant naturally have a legitimate tendency to show intention. *Commonwealth* v. *Trefethen, ante,* 180. But, on grounds of public policy, declarations in one's own favor by a party to a suit are not ordinarily received in evidence. In the first place, so far as they purport to be a mere narrative of past events, they are not primarily an expression of present feeling, but a recital of what has been, which for its value depends upon the truthfulness of the speaker. Secondly, declarations of a purpose or intention, or of a feeling, made after the beginning of a controversy to which they relate, are naturally so affected by interest as to be untrustworthy, and for that reason they should not be received. This rule, however, does not go so far as to exclude expressions of pain, or other indications of one's mental or physical condition that may be treated as symptoms, which often are valuable evidence of a condition of body or mind. Thirdly, the danger that declarations may have been made for a purpose, when they are sought to be introduced as evidence in favor of the person making them, has led to the exclusion of them, even on the issue of what was the intention or state of mind of the declarant, unless they are made under such circumstances as to give them some corroboration. In general, such corroboration is found in the fact that they accompany and explain acts which of themselves would be competent evidence on the issue involved. They are then admissible as a part of the *res gestæ.*

When one has changed his place of abode, and the question arises whether he intended to change his domicil, all his acts and conduct which fairly indicate his purpose in that particular within a reasonable time before and after the event may be put in evidence, together with the declarations accompanying such

acts.   The principal difficulty in applying this rule grows out of the uncertainty, in some cases, whether the conduct relied on throws light on the question, and sometimes whether there are such indications that a controversy was foreseen as to require the exclusion of the declarations, as probably made with a consciousness of an interest to make them.   This difficulty has led to some conflict of authority in this Commonwealth, as well as elsewhere.   *Thorndike* v. *Boston*, 1 Met. 242.   *Kilburn* v. *Bennett*, 3 Met. 199.   *Salem* v. *Lynn*, 13 Met. 544.   *Cole* v. *Cheshire*, 1 Gray, 441.   *Wilson* v. *Terry*, 11 Allen, 206.   *Reeder* v. *Holcomb*, 105 Mass. 93.   *Wright* v. *Boston*, 126 Mass. 161.   *Brookfield* v. *Warren*, 128 Mass. 287.   *Pickering* v. *Cambridge*, 144 Mass. 244.   *Mutual Ins. Co.* v. *Hillmon*, 145 U. S. 285.   *Insurance Co.* v. *Mosley*, 8 Wall. 397.

Without attempting to review the cases, we are of opinion that no error is disclosed in this bill of exceptions.   The plaintiff's notice to the assessors of Waltham that he was about to change his residence was given just before he started for Chicago, and was so closely connected with the act of going that it might perhaps be held competent, under the strictest rule, as accompanying and explaining his act of removal.   At all events, it was a part of an apparent effort to effect a change of residence which should be complete, and be recognized by the assessors.   Both the act of visitation of the assessors and the language accompanying it were competent as indicating the plaintiff's purpose in regard to his residence.*   *Kilburn* v. *Bennett*, 3 Met. 199.

The other conversations testified to were either on the last two days of April, or early in May, 1890.   Having just arrived in Chicago, the plaintiff consulted each of the two witnesses in regard to the measures necessary to be taken to establish his

---

* The plaintiff was asked, "Did you have any talk with the assessors prior to May 1, 1890, with regard to your residence?"  His answer was, "I did n't see them together; I saw the chairman, Mr. Smith, first; I told him I should change my residence to Chicago. . . . When I told him that, 'Do you require me to give you writing to that effect?' I asked him at the time.  He hesitated and said, 'You say you shall change?' 'Yes, sir, I shall change,' I said.   Then he said, 'No, there is no need of your giving me a writing; you have a right to change your residence if you like.'"

It appeared by other testimony that this conversation was just before he started for Chicago.

residence and acquire citizenship in Chicago. His solicitation of advice on this subject was in each case an act apparently done naturally and regularly, which tended to show his state of mind in regard to his change of his place of abode and his intention in regard to his domicil. What he said in connection with these consultations was competent as a part of the *res gestæ*.*

*Exceptions overruled.*

*C. M. Ludden*, for the defendant.
*S. J. Elder*, for the plaintiff.

---

* One Underwood, connected with the Chicago firm to which the plaintiff belonged, was asked in the seventh interrogatory of his deposition: "Did the plaintiff at any time within these years (1889, 1890), and prior to September 1st, 1890, have any conversation or correspondence with you, or in your presence, in regard to making or having made Chicago his residence?" The answer was: "He had a number of conversations with me on that point, and also had correspondence. He said to me that he desired to make Chicago his home; that his family was scattered, and his business interests were larger in Chicago and Omaha than elsewhere; that he had elected and decided to make a change of residence, and solicited my advice and assistance as to what steps were necessary to bring about such a result; he told me he would like to see the assessor here (Chicago) to announce his intention to become a citizen of Chicago. I told him I did not think that would be of any use; that he was an American citizen, and had a perfect right to elect his place of residence anywhere in the country if he did it in good faith and did not take any action at any other place than Chicago in the way of voting, and so on, which would show that he made that particular place his home. He said he had decided to make Chicago his home, and that he should act under that decision, and wanted to take any steps that were necessary to carry that resolution in force."

The eighth interrogatory was the same as the seventh, except that "May 1st, 1890," was substituted for "September 1st, 1890." The answer was: "I had a conversation with Mr. Viles prior to the 1st of May, 1890, regarding his taking up his residence in Chicago, and making it his home. He told me that he had determined to do so, and should take all necessary steps possible to conform to that decision. He asked me what it was necessary for him to do. He said he had notified his friends East that he had taken steps, and had told people here also, and that it was his decision to become a citizen of the State of Illinois, and give up his citizenship in Massachusetts."

It appeared by other testimony that these conversations were late in April and early in May, 1890.