CHAMBERS et ux. v. PRINCE.

(Circuit Court, D. West Virginia. May 29, 1896.)

1. DOMICILE—CHANGE—EVIDENCE.
    The question of a change of domicile is mostly one of intention with the party, as to which his declarations must control, unless overthrown by acts inconsistent with them.

2. SAME.
    To effect a change of domicile there must be (1) residence in the new locality, and (2) intention to remain there.

3. SAME.
    Upon the evidence in this case, upon the question of plaintiff's domicile, *held*, that the effect of the repeated declarations of the plaintiff that it was at no time his intention to make the state of West Virginia his home, but that it was his intention to return to Missouri, where he had resided for many years, as soon as he had finished his business in West Virginia, was not overcome by evidence that he had resided in West Virginia for more than a year, reasons for his stay being shown, that he had returned certain property for taxation in West Virginia, that he had registered at hotels as from West Virginia, or that his wife had declared she would not live in Missouri.

Brown, Jackson & Knight and J. H. McGinnis, for plaintiffs.
Watts & Ashby and John W. McCreery, for defendant.

JACKSON, District Judge. This is a suit in equity, instituted by T. W. Chambers and wife, alleging that they are residents and citizens of the state of Missouri, against Burt Prince, executor of Edwin Prince, deceased, a citizen of the state of West Virginia. The question at issue is whether the domicile of the plaintiff in this case, at the institution of this suit, was in Missouri or in West Virginia. The bill was filed on the 28th day of October, 1895, and the subpœna in chancery was issued returnable to December rules, 1895. Much evidence has been taken in regard to the question whether the plaintiff was at the time of the institution of this suit a resident of Missouri or West Virginia. The facts testified to by the witnesses on the opposing sides have somewhat the appearance of being conflicting; but an analysis of the evidence clearly shows, to my mind, that they are not necessarily conflicting, and are easily reconciled with each other. The question whether a party moving from one state to another has acquired a legal residence in the state to which he has removed has been passed upon in many instances, and, so far as I am able to judge from the adjudications, it is mostly a question of intention with the party. The evidence discloses that the plaintiff had resided in Pacific, Mo., for a number of years, and was engaged in business there until he formed the intention of going to West Virginia, with a view of intermarrying with the lady to whom he was afterwards married. Pacific was his domicile, and by reason of his being domiciled there he was not only a

resident, but a citizen, of the state of Missouri. A domicile thus acquired will continue until it is shown to have been changed. Somerville v. Lord Somerville, 5 Ves. 787; President, etc., v. Gore, 5 Pick. 370. It appears from the evidence that when Chambers left the state of Missouri and went to the state of West Virginia he went for a specific purpose, and, so far as is disclosed by the evidence, there was no intention upon his part to acquire a new residence and domicile or a settled home in West Virginia. His only object, so far as the evidence discloses, was to intermarry with the lady to whom he was married after his arrival in West Virginia. It is a well-settled principle that where a party leaves his residence, or acquires a new one, the declaration of nis intentions must control, unless those declarations are overthrown by acts inconsistent with them. The absence, even for a short time, from a home that a party has long occupied, if accompanied with the intention of making the place to which he has removed a residence, is sufficient to establish a domicile at his new place of abode, although he may have altered, shortly afterwards, his intention in reference to the change.

As to the question of intention, we must strongly rely upon the declarations of the party, though they are not necessarily conclusive, because those declarations may be met and opposed by acts of the party that would control them. This principle of law seems to be well settled by both the state and federal authorities. Kreitz v. Behrensmeyer, 125 Ill. 141, 17 N. E. 232; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289; Viles v. City of Waltham, 157 Mass. 542, 32 N. E. 901; White v. Tennant, 31 W. Va. 790, 8 S. E. 596. In this connection it is to be noted that there is not only an obvious but a wide distinction between domicile and residence, which is recognized by all the authorities that I have examined. Domicile is a residence accompanied with proof, either positive or presumptive, of the intention of the party to remain at his place of abode for an unlimited time. It will be observed that domicile consists of two things, which must concur,—residence and intention to remain. Gilman v. Gilman, 52 Me. 165; Gravillon v. Richards' Ex'r, 13 La. 293; Hairston v. Hairston, 27 Miss. 704; Hart v. Lindsey, 17 N. H. 235. A party may be a resident of a place, and yet not domiciled there, for, while he is resident there, still if he does not intend to make that his permanent place of abode, but has always the "animo revertendi," there can be no doubt that the mere fact of his residing for the time being in a place does not establish a domicile at the place of residence. A man always retains his domicile if he leaves it "animo revertendi." Long v. Ryan, 30 Grat. 718; Pilson v. Bushong, 29 Grat. 240.

Having settled the questions of law which govern and control the question arising upon the facts in this case, I will now discuss the evidence relied upon by both parties in support of their respective positions. The evidence of the plaintiff himself states in unequivocal terms that at no time up to the date of the institution of this suit was it his intention to make the state of West Virginia his place of permanent abode, but, on the contrary, when asked by

various parties, he had on repeated occasions stated "that it was his intention to return to Missouri as soon as he could settle up his business in the state of West Virginia"; and the inference, from all that he has said upon that subject, clearly satisfies me that there was an abiding intention upon his part to return, sooner or later, to Missouri, and that at no time had he ever intended to change his domicile. In this he is supported by the evidence of B. F. Harper, John Anderson, C. K. Scott, William McKeever, and Mrs. Josephine Morris. Harper states that he had known Chambers for about two years, and in the course of a conversation with him in reference to a loan that he had applied for to Chambers he replied "that he did not know that he would remain here, and did not care about scattering his money." This declaration of Mr. Chambers to the witness shows that at that time he had no fixed and determined purpose to change his residence, and he assigned that as a reason why he did not care to make loans of money here. Anderson testified that he had known the plaintiff for about a year, and that in a conversation with him in regard to locating in West Virginia, he asked him on the day that he was married if he was going to remain in West Virginia, to which Chambers replied "that he did not know." Chambers also stated in other conversations, in the latter part of August, 1895, "that he did not intend to stay in this country; that as soon as he got his business settled up he was going to move back to Missouri." Scott testified that in a conversation with Chambers in July, 1895, Chambers stated "that he did not expect to remain in West Virginia any longer than was necessary to settle up his business." McKeever testified that the day before Chambers was married he stated "that he was going to return to Missouri, and that since that time he has all the time claimed that he was going back to Missouri, as that was his home." Mrs. Morris states that on the 27th day of May, 1895, she heard Chambers "tell her husband that he did not expect to make West Virginia his home, only for a little while, until he could get his business fixed up." In addition to the evidence taken by the plaintiff in support of his position, the defendant took the evidence of two witnesses in Missouri,—one the cashier of a bank at Pacific, Mo.,—to sustain the defendant's position, which not only fails to sustain it, but clearly supports the claim of the plaintiff. The first witness examined (Mr. Beaver) testifies to nothing that tends to throw any light upon the subject of the plaintiff's intentions in regard to changing his residence from Missouri to West Virginia. The second witness, who was the cashier of the bank, testifies that Chambers did business with his bank, being one of its depositors; that he knew Chambers well, and that his relations with him might be regarded as intimate; that Chambers, on the occasion of a visit to Pacific, Mo., shortly after his marriage, "told him he was coming back," the fair inference from which language is that he was going to return there to live. This witness also testified that he had received several letters from Chambers, and that in some of them he stated "that, as soon as he got his business affairs straightened up, he was coming back to Pacific, Missouri"; and that Chambers also

wrote him to inquire in reference to a certain business lot in Pacific, saying that he desired to purchase it for a business place. This deposition was taken on the 24th day of March, 1896, and the witness stated that it was about six months previous to the time of giving his deposition that Chambers had written him in regard to buying a lot for him for business purposes, which fixes the time as prior to the institution of this suit. To the evidence of the plaintiff, supported by the two witnesses of the defendant, is opposed the evidence of Mr. Hollingsworth, Mr. McCreery, and Mr. Prince. The evidence of Mr. Hollingsworth is taken to show that the plaintiff in the action returns certain property in West Virginia for taxation. Mr. Hollingsworth, in his first deposition, swore that the plaintiff had made out the list; but it subsequently turns out that Hollingsworth was mistaken, and that the list was made out by the assessor himself. When the list was produced by the plaintiff the evidence shows that the items listed were in the handwriting of the assessor. Under the statute of West Virginia the assessor was required to list all property of residents within the state; not citizens of the state, but residents; and Mr. Chambers, as he states in his deposition, thought that he was required to make that return, because he was a temporary resident of the state, and was advised to do so to save trouble. This, of itself, does not show the fact that he was a citizen, and all that we can infer from it is that he was a temporary resident, and, rather than have trouble, as he states in his deposition, he was willing to return the property for taxation. Evidence is also given that when in Cincinnati and other places, after his marriage, Chambers registered himself and wife as from Raleigh, W. Va., and this is claimed to be a significant fact, as tending to show where his domicile was. It cannot be doubted that a man has the right to register either from his domicile or from his temporary place of abode. We have striking illustrations of that fact in the cases of citizens in public life, as well as citizens who have domiciles in one section of the country, with a residence in another, the latter being a mere temporary abode, for climatic reasons. A wealthy man who lives in the North, and has his domicile there, has his winter residence in the South; and that is his temporary abode. A wealthy man in the South, who desires to escape the heat of that section of the country, has his summer residence in the North. Other illustrations might be given which tend to throw light upon this subject, but for that purpose it is deemed unnecessary. It is also claimed that Chambers' wife declared, upon some occasions, that she would not live in Pacific, Mo., but we are not aware of any rule of law that makes such declarations or acts of a wife evidence to bind the husband. On the contrary, the domicile of the husband is, in law, the domicile of the wife; and although Mrs. Chambers declared that she would not live in Pacific, Mo., yet that declaration upon her part did not tend to establish a change of Chambers' domicile, and cannot be applied to make her acts and intentions affect the domicile of her husband. Parsons v. City of Bangor, 61 Me. 457. The evidence of Mr. McCreery, one of the attorneys in the case, and connected by mar-

riage with the family of the defendant, does not throw any special light upon this subject as regards the intentions of the plaintiff in reference to his residence. Mr. McCreery states that he had two conversations with Mrs. Chambers, in one of which she said she would not go to Missouri, and in the second of which, after the commencement of the suit, she said they had decided to go to Missouri. But there is no evidence upon the part of Mr. McCreery of any interview or conversation with Mr. Chambers in which he states that he was going to remain to gratify the wishes of his wife as stated in her first conversation with him.

The only other significant fact connected with the case is the time that the plaintiffs have remained in West Virginia. This is accounted for—First, by the fact that the executor had 12 months in which to settle up the estate after the death of the first husband of Mrs. Chambers; second, that there had arisen a difference between the executor and the plaintiffs to this action, as to what they were entitled to. Negotiations had been pending with a view to adjust and settle those differences, which had failed; and upon the failure of those negotiations this suit was instituted with a view to settling up that estate. Looking at this case, which involves the questions of fact as to what was the "animus" of this plaintiff, I must pass upon them as a jury would be expected to pass upon questions of fact. Justice Swain, in ruling upon this subject, in the case of Mitchell v. U. S., 21 Wall. 350, uses the following language, which I adopt as the law in this case:

"A domicile, unless changed, is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute a new domicile, two things are indispensable: First, residence in the new locality; second, the intention to remain there. The change cannot be made except 'facto et animo.' Both are alike necessary. Either, without the other, is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be animus to change the prior domicile for another. Until a new one is acquired, the old one remains. These principles are axiomatic."

Applying this principle of law to this case, I conclude that the weight of evidence is not with the defendant, but with the plaintiffs in this action, as to the question of domicile. Independent of the circumstances in relation to the assessment of the plaintiff for taxes, the declarations of his wife, and the registration of his name, there is no evidence, beyond the fact that he has remained in the county upward of a year, that tends to show that he ever entertained the idea at any time of abandoning his home in Missouri and establishing his residence in West Virginia. On the contrary, his evidence, as well as the statements of those who had frequent conversations with him prior to the institution of this suit, all tend to show that he had never changed his intention of returning to Missouri. I reach the conclusion, therefore, that the plea in abatement cannot be sustained, and that the jurisdiction of the court must be maintained.