PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA v. TOMPKINS.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1900.)

No. 339.

1. PLEADING—AMENDMENTS—DISCRETION OF COURT.
    The allowance of an amendment to a declaration, changing an allegation as to the citizenship of the plaintiff to conform to the writ, is within the discretion of the court.
2. FEDERAL COURTS—VENUE—WAIVER OF OBJECTIONS.
    The objection that an action is brought in a district in which neither the plaintiff nor defendant resides is not waived by a defendant by attending at the taking of depositions by the plaintiff before the issues are made up, nor by failing to file a plea in abatement.
3. SAME—RESIDENCE OF PLAINTIFF.
    Plaintiff, who had previously been a citizen and resident of West Virginia, removed with his family into Virginia, where he bought a house, in which he resided with his family, paid taxes, and voted for some three or four years, after which he determined to return to West Virginia, and rented a house there, but before his actual removal he commenced an action in the circuit court of the United States in West Virginia against a corporation of California. Held, on a plea by defendant to the jurisdiction, that, even conceding that plaintiff had not lost his domicile in West Virginia by his removal, he had lost his residence, which was only regained by his actual return to the state to reside, and that at the time of the commencement of the action he was not a resident of the state, so as to give the court jurisdiction under the judiciary act of 1888.

In Error to the Circuit Court of the United States for the District of West Virginia.

B. S. Hutchinson and John F. Brown (Brown, Jackson & Knight and Harvey, Wyatt & Hutchinson, on brief), for plaintiff in error.

F. B. Enslow (Simms, Enslow &. Alderson, on brief), for defendant in error.

Before GOFF and SIMONTON, Circuit Judges, and WADDILL, District Judge.

SIMONTON, Circuit Judge. This case comes up by writ of error to the circuit court of the United States for the district of West Virginia. The action in the court below was brought by George H. Tompkins, defendant in error here, against the Pacific Mutual Life Insurance Company of California, plaintiff in error; the cause of action, injury caused to the plaintiff by reason of malpractice upon the part of the physician of the defendant company. The first question raised in the case was as to the jurisdiction of the court.

George H. Tompkins, the plaintiff, was born in the state of West Virginia, and married in Huntington, in that state. He lived there five years. He obtained employment as a brakeman on the Chesapeake & Ohio Railroad, and for the sake of convenience he removed with his family to Clifton Forge, Va., in the latter part of 1893, or early in the year 1894. He lived with his family in Clifton Forge until October, 1898. He owned the house in which he lived in Clifton Forge, paid his taxes there, and exercised the right of suffrage in that town. About July, 1898, he was promoted, or expected promotion, as baggage master on the same road, and as by this promotion he had a long lay-over at Huntington, W. Va., he rented a house in that place. He did not remove at once, and did not complete his preparations for removal until 26th October, 1898. His delay was caused in part by the illness of his wife. On the 26th October, 1898, he removed finally to Huntington. On 2d September, 1897, Tompkins sustained an accident, whereby his foot and ankle were seriously wrenched and strained. He was compelled to call in a physician, who prescribed for him, and inclosed the injured parts in a plaster of Paris cast. At that time he held an accident policy in the defendant company. Under the terms of that policy, it was provided that the insured should permit any medical adviser of said company to examine the body of the insured in respect to any alleged injuries, in such a manner and at such times as the medical adviser might require. Under this clause in the policy, James F. Hughes, the medical adviser of the company, called upon Tompkins on October 8, 1897, for the purpose of making this examination. To this end, he took off the plaster cast and examined the injury, did not replace it, and advised Tompkins to take other means of cure. Tompkins followed his directions, became rapidly worse, and, finally, taking resort to other medical advisers, after much time and suffering, was reasonably cured. He charges malpractice upon the part of this medical agent of the company, and seeks to hold it responsible therefor. He brought his action on 30th of September, 1898, in the circuit court of the United States for the district of West Virginia. The writ states that the defendant is a citizen and resident of the state of California, and that the plaintiff is a citizen and resident of the state of West Virginia. The declaration setting forth

the jurisdictional clause says that the plaintiff is a citizen and resident of the state of Virginia. On 12th January, 1899, the circuit court of the United States granted leave to the plaintiff to amend his declaration so as to accord to the writ, and to insert the word "West" before the word "Virginia," thus alleging him to be a citizen and resident of the state of West Virginia. The allowance or refusal of this amendment was one of discretion in the circuit court, and is not reviewable here. Chirac v. Reinicker, 11 Wheat. 302, 6 L. Ed. 474; Walden v. Craig, 9 Wheat. 576, 6 L. Ed. 164; Wright v. Hollingsworth, 1 Pet. 165, 7 L. Ed. 96; Opelike City v. Daniel, 109 U. S. 108, 3 Sup. Ct. 70, 27 L. Ed. 873.

Thereupon the defendant filed its plea to the jurisdiction of the court; traversing the allegation as to the citizenship and residence of the plaintiff, and averring that at the date of bringing the suit he was a citizen and resident of the state of Virginia; so, the defendant being a citizen and resident of the state of California, the suit was not brought in a district in which either the plaintiff or defendant was resident. To this plea the plaintiff filed two replications,—one joining issue on the allegation of citizenship and residence; the other averring that the defendant had waived all objection to the jurisdiction by reason of the fact that on separate occasions, before filing said plea, it had appeared at the taking of depositions on behalf of the plaintiff, and had then and there cross-examined witnesses, without exception or protest, and without saving the question of jurisdiction. The issues on these pleas were submitted to the court without the intervention of a jury. The court sustained these objections to the plea, and it was overruled. Defendant excepted, and this is one of the assignments of error.

At the time these depositions were taken, the declaration, on its face, stated that the action brought in the district of West Virginia was brought by a citizen and resident of the state of Virginia against a citizen and resident of the state of California. This of itself showed that the court had no jurisdiction. "Where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." Act Cong. Aug. 13, 1888 (25 Stat. 433). No plea was necessary, as without amendment the court, suo motu, would have dismissed the suit. Nor could this have been waived. A person is protected from any original process or proceeding in any other district than that whereof he is an inhabitant. Id. This is his personal privilege, and he may waive that. Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98. But the provision quoted applies to the suit, and it limits the jurisdiction to suits brought only in the residence either of plaintiff or of defendant. Even if it could be waived, the mere presence of the defendant at an examination of witnesses, taken before issue made up, and in anticipation, would not be a waiver of any objection to the jurisdiction. It is only a very proper precaution. It is said that the proper mode of objection to the declaration was by plea in abatement, and that by omission to enter such plea the objection was waived. An objection to the jurisdiction of a circuit court of the

United States for want of the requisite citizenship of the parties is not waived by filing a demurrer for the special and single purpose of objecting to the jurisdiction, or by answering to the merits upon that demurrer being overruled. Southern Pac. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 377. "Under the judiciary act of 1789, an issue as to the fact of citizenship could only be made by a plea in abatement when the pleadings properly averred the citizenship of the parties. But the act of 1875 imposes on the circuit court the duty of dismissing a suit if it appears at any time after it is brought, and before it is finally disposed of, that it does not really and substantially involve a controversy of which it may properly take cognizance. Williams v. Nottawa Tp., 104 U. S. 209, 26 L. Ed. 719; Farmington v. Pillsbury, 114 U. S. 138, 5 Sup. Ct. 807, 29 L. Ed. 114; Little v. Giles, 118 U. S. 596, 7 Sup. Ct. 32, 30 L. Ed. 269. And the statute does not prescribe any particular mode in which such fact may be brought to the attention of the court." Morris v. Gilmer, 129 U. S., at page 326, 9 Sup. Ct. 292, 32 L. Ed. 694. The crucial question is, was the plaintiff, at the date the action was brought, a citizen and a resident of the state of West Virginia? The jurisdiction depends on the state of the parties at the commencement of the suit. No subsequent change of citizenship can affect it. Conolly v. Taylor, 2 Pet. 556, 7 L. Ed. 518; Anderson v. Watt, 138 U. S. 694, 11 Sup. Ct. 449, 34 L. Ed. 1078; Morgan v. Morgan, 2 Wheat. 297, 4 L. Ed. 242.

At the beginning of this suit the plaintiff had his home and family at Clifton Forge, in the state of Virginia. He had lived at Clifton Forge from 1893, or the beginning of 1894, up to that time, owned his house there, voted there. He had been born in the state of West Virginia, and had lived at Huntington, in that state. He removed to Clifton Forge, Va., and had changed his domicile. Was this change made animo manendi? By this term is not meant the hope and expectation which so many entertain who leave their homes for business purposes or to better their fortunes,—of some day returning to the place of their birth, and there to reap the reward of their efforts. But did he go to Virginia intending to make it his home so long as his business required it? He had no home elsewhere. He established his home at Clifton Forge by buying a house and putting his family in it. He paid his taxes there. As has been seen, he cast his vote there. In his application for his policy he stated his residence to be Clifton Forge, May 21, 1897. In his claim notice, September 5, 1897, he states his name, and his residence as Clifton Forge, Va. The policy states him to be of Clifton Forge, Va. "Among the circumstances usually relied on to establish the animo manendi," says the court in Mitchell v. U. S., 21 Wall. 353, 22 L. Ed. 584, are declarations of the party, the exercise of political rights, the payment of personal taxes, a house of residence, and a place of business." "On a change of domicile," says the court in Shelton v. Tifflin, 6 How. 185, 12 L. Ed. 397, "from one state to another, citizenship may depend upon the intention of the individual. But this intention may be more satisfactorily shown by acts than declarations. An exercise of the right of suffrage is conclusive on the subject." In

The Venus, 8 Cranch, at page 279, 3 L. Ed. 562, if one removes with the intent to make a permanent settlement or for an indefinite time, he changes his domicile. See Knox v. Greenleaf, 4 Dall. 360, Fed. Cas. No. 7,908; Byrne v. Holt, 2 Wash. C. C. 282, Fed. Cas. No. 2,272; also, Ennis v. Smith, 14 How. 400, 14 L. Ed. 472. There is a very strong presumption that in the case at bar the plaintiff had changed his domicile, and had become a citizen of the state of Virginia. He, no doubt, hoped and intended to return to his former home in West Virginia. But the consummation of that hope and intent depended upon circumstances beyond his control,—the happening of some fortunate event giving him opportunity of return. But, besides this, and even admitting, for the sake of argument, that the remote expectation and hope of return to West Virginia were sufficient to prevent a change of domicile, and so he remained a citizen of West Virginia, this would not be sufficient to give the court jurisdiction. He must have been at the institution of the suit a resident as well as a citizen of the state of West Virginia. Now, on the 30th of September, the day this suit began, he and his family still had their home in Clifton Forge, Va., which he had purchased, and in which he had established them. From this home he and they did not remove until nearly a month afterwards. Even if he had not changed his domicile, he certainly had his residence in the state of Virginia. Residence and domicile are not the same. "A party may be a resident of a place, although not domiciled there." Chambers v. Prince (C. C.) 75 Fed. 177. Opinion of supreme court of Massachusetts to the legislature, 5 Metc. 587, Supp. It is true that he had made every preparation for removal, and had a fixed intention to remove. But, to make a change of residence, two things must concur,—the intention to remove and the act of removing. "A citizen of the United States is entitled to transfer his citizenship from one state to another, by change of domicile, whenever he desires to do so. And when there has been an actual removal with intent to make a permanent residence, and the acts of the party correspond with the purpose, the change of domicile is completed, and the law forces upon him the character of a citizen of the state where he has chosen his domicile, although he may have formerly declared that he nevertheless considered himself a citizen of the state he has left." 6 Am. & Eng. Enc. Law (2d Ed.) p. 32; Butler v. Farnsworth, Fed. Cas. No. 2,240. So, also, in Ennis v. Smith, 14 How., at page 423, 14 L. Ed. 472, actual residence is necessary for a change of domicile; and, by analogy, actual removal is necessary for a change of residence. The rule of Ennis v. Smith is still more distinctly stated in Mitchell v. U. S., 21 Wall. 353, 22 L. Ed. 584. The change must be both facto et animo. In Penfield v. Railroad Co., 134 U. S. 351, 10 Sup. Ct. 566, 33 L. Ed. 940, is a decision as to the term "residence," as contradistinguished from "domicile." In that case it was held that a traveling salesman residing in St. Louis, Mo., who had sent his wife and children to Brooklyn, N. Y., where they took up their residence and commenced to keep house, and have since then resided, did not become a resident of the state of New York until he joined his family there, and changed his actual residence to that state, although his

domicile might be there. In that case many New York cases are quoted, and commented upon with approval, all showing that the term "residence" means actual residence, and not residence in contemplation. In our opinion, the plea to the jurisdiction was well taken, and should have been allowed. The case will be remanded to the circuit court, with instructions that the same be dismissed for want of jurisdiction.

## On Rehearing.

### (May 19, 1900.)

The petition for rehearing filed in this case has received careful consideration. With so much of the decision of this court as holds that the plaintiff was not a resident of the state of West Virginia when the action was instituted, we see no reason to change our opinion. The petition for rehearing calls the attention of the court to the fact that proceedings in attachment were issued in this case in the circuit court of the United States for the district of West Virginia, and that moneys have been attached, and are now held, sufficient to pay the judgment obtained below. Attention is also called to the fact that under the law of West Virginia the defendant corporation was required to appoint a resident agent upon whom process against it could be served. Upon these grounds it is contended that the defendant corporation could be sued in the district of West Virginia, and virtually had a residence therein. The validity of the attachment proceedings depends altogether upon the question, had the court jurisdiction of the cause? If it had not originally, the fact that moneys were attached under it cannot create jurisdiction. The language of the act of congress on this subject is as follows:

"And no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." Act Cong. Aug. 13, 1888 (25 Stat. 434).

The plaintiff is not a resident of the state of West Virginia. Can the defendant corporation, created under the laws of the state of California, be a resident of the state of West Virginia? In Railroad Co. v. Koontz, 104 U. S. 12, 26 L. Ed. 643, it is held that a corporation created under the laws of a state is resident there, and nowhere else. It must dwell in the place of its creation, and cannot migrate to another sovereignty. But its residence in one state creates no insuperable objection to its contracting in another. In Shaw v. Mining Co., 145 U. S. 449, 12 Sup. Ct. 935, 36 L. Ed. 768, it is held that under the act of congress quoted above a corporation can sue or be sued only in the state or district in which it is incorporated, or in the state of which the other party is a citizen. In Re Hohorst, 150 U. S. 662, 14 Sup. Ct. 10, 37 L. Ed. 1211, this rule is emphasized, but it is held not to apply to a case of a foreign or alien corporation. And this exception is declared in Railway Co. v. Gonzales, 151 U. S. 503, 14 Sup. Ct. 401, 38 L. Ed. 248, to have been made in order to prevent a failure of justice, and it was distinctly declared that the term "foreign" meant an

alien corporation. In re Keasbey & Mattison Co., 160 U. S. 230, 16 Sup. Ct. 273, 40 L. Ed. 402, discusses and decides the same question, and says:

"That case [Hohorst] is distinguishable from the one now before the court in two essential particulars: First, it was a suit against a foreign corporation, which, like an alien, is not a citizen or an inhabitant of any district within the United States; second, it was a suit for infringement of a patent."

And upon this ground, also, was decided Steamship Co. v. Kane, 170 U. S. 112, 18 Sup. Ct. 526, 42 L. Ed. 964, relied upon in the petition for rehearing.

The petitioner seems to rely on the act of 1875 as giving jurisdiction, and lays stress upon the attachment levied upon the moneys of the defendant corporation. The act of 1875 gives jurisdiction against an absent defendant in a suit to enforce any legal or equitable lien upon or a claim to, or to remove any incumbrance, cloud, or lien upon, the title to real or personal property within the district. But, when this suit was brought, the plaintiff had no such lien upon or claim to the moneys attached. Its claim or lien arose because of the suit, and the suit did not arise because of the lien. No doubt, if the plaintiff had been a citizen and resident of the state of West Virginia at the time his suit was brought, he could have maintained his action, and could have pursued under attachment proceedings all that the laws of West Virginia could allow him. Rev. St. U. S. § 915. But he was not a resident of the district of West Virginia at that time, nor could the corporation of California be, in the sense of the statute, a resident of that district. Southern Pac. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 377. And the circuit court had no jurisdiction. In the state court, probably, he could have had full remedy. The petition is dismissed.