MARÍA DE LOURDES GONZÁLEZ GIUSTI, ETC., Petitioner and Appellee, v. SOL LUIS DESCARTES, SECRETARY OF THE TREASURY, Respondent and Appellant.

No. 10812. Argued May 5, 1953.—Decided February 26, 1954.

José Trías Monge, Attorney General, (J. B. Fernández Badillo, Acting Attorney General, on the brief) and T. C. Santiago Matos, Assistant Attorney General, for appellant. Córdova & González and Robert E. Schneider, Jr., for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Treasurer of Puerto Rico, now Secretary of the Treasury, notified the petitioner appellee of a deficiency in her income tax return for the year 1947, amounting to $1,329.04, including interest until May 30, 1951, on the ground that the petitioner was not a resident of Puerto Rico in the year 1947, whereby the rate of 29 per cent fixed for non-residents by the Income Tax Act was applicable and not the rate for residents which she used in her income tax returns for that year. Feeling aggrieved by said deficiency, the taxpayer appealed to the former Tax Court alleging in her complaint (1) that she was an American citizen living in Puerto Rico in the year 1947, sojourning in the State of New York, and (2) that if it were determined that she was not a resident of Puerto Rico in 1947, then she would have the status of an American citizen living in the State of New York and in such case the application to her of the normal rate of 29 per cent would be unconstitutional.

The Treasurer of Puerto Rico denied the essential averments of the complaint and affirmatively alleged that in 1947 the petitioner was not an American citizen, nor did she live temporarily in the State of New York, but that on the contrary, in that year the petitioner was married to a Costa Rican citizen named Guillermo E. Aragón with whom she had her permanent residence in the State of New York.

Upon deciding the case on the merits, the trial court, after concluding that in the year 1947 the petitioner was an American citizen and that she as well as her husband Aragón had at the time, and still have, their domicile in Puerto Rico, rendered judgment sustaining the complaint.

On appeal from that judgment the Treasurer of Puerto Rico alleges that the lower court committed several errors. However, all of them are directed ultimately to prove that the court erred in deciding that the petitioner was in the year 1947 an American citizen residing in Puerto Rico.

Petitioner, María de Lourdes González Giusti, who was an American citizen domiciled in Puerto Rico, married a citizen of Costa Rica in the summer of 1946.

By her marriage she did not lose her American citizenship because she did not make a formal renunciation of it.[1] Therefore, there is no controversy that petitioner appellee is and was, in 1947, an American citizen. There is controversy whether in that year she was a resident of Puerto Rico or of the State of New York. However, in either case there could not be applied to her the normal tax of 29 per cent on income received or accrued after August 5, 1947. *Postley* v. *Secretary of the Treasury*, 75 P.R.R. 822. But since the rate of 29 per cent may be applied to the income received or accrued prior to that date if she was not a resi-

---

[1] Act of September 22, 1922, 42 U. S. Stat. at L., p. 1022, C. 411, § 3; 8 U.S.C.A. Stat. 9, amended by Act of July 3, 1930; Act of March 3, 1931, 46 U. S. Stat. at L., p. 1511, C. 442, § 4; Act of June 25, 1936, 49 Stat. 1917; Act of July 2, 1940, 54 Stat. 715.

dent of Puerto Rico,[2] we feel constrained to solve the problem raised by the respondent appellant and consequently determine whether or not the evidence warrants the conclusion that the appellee was a resident of Puerto Rico in the year 1947. If we should decide this question against the appellee then the tax for the year 1947 would have to be computed on the basis of two rates, that is, the normal rate of 29 per cent and the rate used by her in her income tax return, in which case we would have to follow the method established in *Roig* v. *Tax Court*, 65 P.R.R. 418,[3] with the corresponding variations as to the time which covers each rate.

This brings us to consider the evidence introduced in the case and determine whether the findings of the trial court are correct. The respondent did not introduce any evidence and according to the evidence of petitioner María de Lourdes González de Aragón, she was an American citizen and a citizen of Puerto Rico and has always lived here. In 1941 while studying in the city of New York she met there the man who is now her husband, Dr. Guillermo Enrique Aragón, who was then a citizen of Costa Rica. Aragón went to the United States in 1938 and entered the University of Columbia. He received his Bachelor's Degree in 1943 and then entered the Long Island College of Medicine. In 1943 he came to Puerto Rico to meet petitioner's parents and become engaged to her, but the engagement did not take effect because Aragón intended to join the United States Army. In this same year Aragón joined the Army as volunteer, serving until March 1945. In June of that year he again entered Long Island College of Medicine, and on

---

[2] *Buscaglia, Treasurer* v. *Tax Court*, 68 P.R.R. 322; *Postley* v. *Secretary of Treasury, supra.*

[3] We copy from the syllabus of this case:

"A calendar year taxpayer confronted with two tax laws permitting different rates for portions of the same fiscal year should take his income for the year as a whole, calculate the tax thereon at the old and new rates, and divide each of these figures by two. The sum of these two figures represents the tax for the year—half at the old rate, half at the new. . . . . ."

Christmas of that same year he returned to Puerto Rico to become engaged to petitioner, setting July 5, 1946 for the wedding. Aragón and the petitioner married in Puerto Rico on the latter date and lived for two months in an apartment on the upper story of the house of petitioner's parents, located at the place known as "Caparra," in Santurce, Puerto Rico. Petitioner's father gave her and her husband a lot in Caparra to build their house. Aragón then returned with his wife to the United States to continue his studies in New York receiving his doctor's degree in June, 1948 and ending his internship in June 1949. In 1947 Aragón and his wife came to Puerto Rico to spend the Christmas vacation here and they occupied the same apartment at the house of petitioner's parents. After finishing his internship, Dr. Aragón decided to specialize in surgery. This required five more years of study. As a first step he took a post-graduate course at Bellevue Medical College and then began a two-year residence in St. Vincent's Hospital of New York, which he finished in 1951. In the year 1952 he was in his third year at the University of Colorado and he will finish his course in June 1954. He did not study in Puerto Rico because at that time there was no institution here approved by the American Board of Surgeons which is the one that issues the diploma to surgery specialists. The evidence revealed that Aragón never became a member of any civic or social association in Puerto Rico nor attended in 1947 any church as a permanent member. The evidence also reveals that in 1950 Aragón became an American citizen. Since 1939 Aragón has not returned to his native country, Costa Rica. The evidence likewise reveals that resident doctors specializing in approved American medical schools received a salary which fluctuates between $100 and $250.

On the basis of this evidence, the trial court concluded that the spouses Aragón González established their domicile and permanent residence in Puerto Rico, when they con-

tracted marriage on July 5, 1946[4] That conclusion implies that Aragón was a resident of Puerto Rico in 1947 and that therefore his wife was also a resident, since by contracting marriage she acquired the domicile of her husband. *Buscaglia, Treas.* v. *Tax Court*, 69 P.R.R. 844.

Now then, pursuant to § 11 of our Political Code, in order to determine domicile the following rules shall be observed:

"1.—It is the place where one habitually resides when not called elsewhere for labor or other special or temporary purpose, and to which he returns in seasons of repose.

"2.—There can only be one domicile.

"            .        .        .        .        .        .        .

"7.—Domicile can be changed only by the union of act and intent."

The parties agree that in order to acquire a domicile by voluntary choice, two requirements are essential, to wit: (1) physical presence and (2) intention to remain in the place chosen. Kennan, On Residence and Domicile, § 13; 53 Harv. L. Rev. 68.

As to the first requirement there is no controversy. Aragón contracted marriage in Puerto Rico and remained here for two months after his wedding. What evidence is there as to the second requirement? The record shows that Aragón returned to Puerto Rico in 1947 to spend his Christmas vacations. It also shows that at the trial in March 1952, the petitioner and her husband declared that in November 1945 when they became engaged they decided to establish their domicile in Puerto Rico and that such domicile was established when they contracted marriage.[5] However, such

---

[4] Our review is no longer limited, as the appellee alleges, to errors of law. See § 14 of the Judiciary Act of the Commonwealth of Puerto Rico (Act No. 11 of July 24, 1952.)

[5] As appears from its findings, the trial court gave great credit to this testimony and to that effect stated: "Since December 1945 the sweethearts had decided to establish their domicile in Puerto Rico; . . ." "In the summer of 1945 . . . . Aragón and his fianceé made plans to marry

a declaration made after the beginning of the controversy as to the domicile of the petitioner, should not benefit her or be of such use, to the extent that it be considered almost controlling in the determination of the controversy. *Viles v. City of Waltham*, 32 N.E. 901; *Ayer et al v. Weeks*, 18 Atl. 1108; *In Re Dorrance's Estate*, 163 A. 303; 28 C.J.S., § 18 (*b*), p. 43; 17 Am. Jur. § 88, p. 641. See also, 61 Harv. L. Rev. 1232, 1237.

Apart from the fact that Aragón came to Puerto Rico in Christmas, 1947, there is no other evidence showing his intention to establish his domicile here. In the absence of such evidence we cannot agree with the petitioner appellee that her domicile in Puerto Rico was duly proven. The whole evidence reveals that already in 1943 Aragón at least was, and until 1947 continued to be, a resident of the State of New York, which in turn was petitioner's residence, as of the date of her marriage. Therefore, petitioner's income tax for the year 1947 should be computed on the basis of the two rates, the normal of 29 per cent and the one used by her in her income tax return.

The judgment appealed from will be reversed and the case remanded to the trial court for further proceedings not inconsistent with this opinion.

MR. JUSTICE NEGRÓN FERNÁNDEZ dissented as to the pronouncement of insufficiency of the evidence to establish petitioner's residence in Puerto Rico.

---

and establish their domicile in Puerto Rico, building here in due time, at the lot that Jòsé María González, father of the bride, had given her, their dwelling." "Next summer without having changed such plans, the sweethearts married and established here their permanent residence." "The domicile of the spouses Aragón-González continues being the one chosen by them in the summer of 1946. It was the same during the whole year of 1947 when he studied during his last year of medicine in Long Island University."